NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0010n.06

Case No. 14-1753

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 07, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SHANNON MARTIS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| DISH NETWORK SERVICE, L.L.C., | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: SILER, GRIFFIN, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Shannon Martis appeals the dismissal of his state-law claims of disability discrimination and retaliation and the confirmation of an arbitration award in favor of his former employer, Defendant Dish Network Service, L.L.C. (DISH). The principal issue is whether federal law or Michigan law governs the district court's review of the arbitration award. We agree with the district court that federal law governs and AFFIRM.

**I.**

DISH hired Martis in December 2006 as a Quality Assurance Specialist, which entailed driving to and evaluating job installations by DISH employees and employees of DISH contractors. In late 2009, DISH replaced the work van Martis had driven for several years with a smaller pick-up truck. PID 499. In early May 2010, Martis emailed his supervisor, Jimmy

Turbeville,[1] asking to drive the larger van because he was experiencing knee, hip, and lower back pain resulting from the awkward position he had to assume (given his height and size, 6'5" and 250 lbs.) to drive the smaller pick-up truck. On May 12 and June 18, 2010, the company doctor recommended that Martis drive the larger van, diagnosing Martis with knee strain and hip tension strain.

In the meantime, on March 2, 2010, Martis had written a letter of recommendation for Robert Knott, an employee of DISH subcontractor Galaxy 1, stating that Knott would be a valuable addition to any company's work force. PID 438, 458. In early June 2010, Robert Byrd, the CEO of Galaxy 1, complained to DISH General Manager Glen Capra that Martis had written a letter of recommendation for Knott and had told Galaxy 1 employees that Vision Quest was a better place to work than Galaxy 1, and that Byrd believed Martis was working as a spy for Vision Quest. Byrd gave a copy of Martis's letter to Capra, which Capra turned over to DISH Human Resources Representative LeTonya Merriweather.

When Merriweather and Martis's supervisor Turbeville met with Martis on June 8, 2010 regarding Byrd's complaints, Martis admitted telling the Galaxy 1 technician that Vision Quest was a better subcontractor to work for and writing the letter of recommendation, and acknowledged that he should have sought Merriweather or Turbeville's approval before writing the letter.

DISH suspended Martis on June 8, 2010, pending a more thorough investigation. PID 441. Merriweather then spoke with Galaxy 1 and Vision Quest representatives and summarized her findings for Turbeville and several superiors (Jared Coleman and Senior HR Resource

---

[1] Martis copied General Manager Capra and Supervisor Gary Hull in his email to Turbeville.

Managers Jeannette Alonzo and Jennifer Falbo). PID 442. These five DISH representatives held a telephone conference on June 28, 2010, and concluded that Martis should be discharged for violating DISH's reference and conflict of interest policies. Turbeville authored a letter stating that Martis was being discharged for violating company policy: "[Martis] wrote a reference letter for Galaxy 1 employee and represented Dish Network in the letter." Attached to Turbeville's letter were DISH's policies on "Reference and Employment Verification" and "Conflict of Interest."

## II.

Martis filed a complaint and demand for arbitration with the American Arbitration Association in June 2012, asserting state claims of height, weight, and disability discrimination, discrimination in violation of Michigan's Worker's Disability Compensation Act, and retaliation. PID 142-50.[2] Thomas Barnes, a labor-and-employment-law specialist, was appointed as arbitrator. PID 152-54.

Following discovery, DISH moved for summary judgment. PID 92-118. The Arbitrator dismissed all of Martis's claims except the discrimination and retaliation claims brought under Michigan's Persons With Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101 *et seq.* PID 157-73. After a four-day hearing and post-hearing briefing by the parties, the Arbitrator dismissed the remaining claims, concluding as to the disability discrimination claim that Martis presented insufficient evidence that his disability was one of the reasons that made a difference in DISH's determination to discharge him, and as to the retaliation claim that Martis failed to

---

[2]Martis's complaint filed with the American Arbitration Association named as respondents Echostar [Communications Corporation], L.L.C., and DISH, which is an affiliate of Echostar. The Arbitration Agreement is on Echostar letterhead. *See* PID 420.

establish a causal connection between his discharge and any protected activity.  PID 186, 190;
175-191.

Martis filed this action to vacate the arbitration award in Ingham County Circuit Court.
PID 1-5.  DISH removed the action to federal court on grounds of diversity, counterclaimed, and
later moved for summary judgment, confirmation of the arbitration award, and dismissal of
Martis's complaint to vacate the award.  PID 70-74.  Martis filed a cross-motion to vacate and
modify the arbitration award, PID 251-76, to which DISH responded that Martis could not
establish that the Arbitrator committed a clear error of law or otherwise exceeded his powers, as
is required for a court to vacate or modify an arbitration award.  PID 388-97.

### III.

The Arbitration Agreement Martis signed as part of his employment with DISH states:

> [A]ny claim, controversy and/or dispute between [Martis and DISH], arising out
> of and/or in any way related to [Martis's] . . . employment and/or termination of
> employment, whenever and wherever brought, shall be resolved by arbitration.
> [Martis] agrees that this Agreement **is governed by the Federal Arbitration Act**,
> 9 U.S.C. §§ 1 et seq., and is fully enforceable.
> . . . .
> The arbitration **shall be governed by and construed in accordance** with the
> substantive law of the State . . . **in which the Employee last performed services
> for [DISH, i.e., Michigan]** . . . . The arbitrator's decision shall be final and
> binding, and judgment upon the arbitrator's decision and/or award may be entered
> in any court of competent jurisdiction . . . .

PID 27 (emphasis added).  Thus the Agreement provides that it is governed by both the Federal
Arbitration Act (FAA) and Michigan substantive law.  As this court has observed:

> Although the FAA generally preempts inconsistent state laws and governs
> all aspects of arbitrations concerning "transaction[s] involving commerce," parties
> may agree to abide by state rules of arbitration, and "enforcing those rules
> according to the terms of the agreement is fully consistent with the goals of the

> FAA." The central inquiry in this choice-of-law determination is whether the parties unambiguously intended to displace the FAA with state rules of arbitration.

*Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 748 F.3d 708, 715–16 (6th Cir. 2014) (quoting *Muskegon Cent. Dispatch 911 v. Tiburon, Inc.*, 462 F. App'x 517, 522–23 (6th Cir. 2012)). In the instant case, the Arbitration Agreement does not unambiguously express an intent to displace the federal standard with Michigan law because it states that it is governed by both the FAA and Michigan's substantive law. Ambiguities are resolved in favor of the federal standard, thus federal law applied to the district court's review of the arbitration award, although Michigan law governed the Arbitrator's substantive decision. *See, e.g.*, *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 303 (6th Cir. 2008) (concluding that, where the parties' choice of law provision referenced both the FAA and Michigan law, the FAA governed); *Savers Prop. & Cas. Ins. Co.*, 748 F.3d at 716 (concluding that where the agreement provided that it was subject to the laws of the State of Michigan and did not refer to the FAA or otherwise suggest that the parties sought to invoke its provisions, the parties intended to displace federal law with Michigan law); *Tiburon*, 462 F. App'x at 523 (concluding that the arbitration agreement evidenced the parties' unambiguous intent to apply Michigan law in any subsequent appeal of the arbitration award where the agreement "explicitly refers to the Michigan Arbitration Act in stating that disputes 'shall be submitted to final and binding arbitration [. . .] pursuant to the provisions of MCL 600.5001–600.5035.'")

Thus, the district court properly determined that the FAA governed its review of the arbitration award.

5

Applying federal law, the district court concluded that because the Arbitrator's analysis and decision were legally plausible,[3] the Arbitrator neither exceeded his authority nor manifestly disregarded the law. PID 511. Martis concedes that under federal law interpreting the FAA, the district court properly affirmed the arbitration award. *See* Appellant's Br. at 6 ("The court below in confirming the award deferred to the Arbitrator as he was required to do under the federal standard applicable in cases under the Federal Arbitration Act."). Thus, we need go no further.

## IV.

We AFFIRM the district court's grant of summary judgment to DISH, its confirmation of the arbitration award in DISH's favor, and its denial of Martis's motion to vacate or modify the award.

---

[3] The district court agreed with Martis that the Arbitrator found that Martis established a prima facie case of disability discrimination and retaliation but disagreed that the Arbitrator found that Martis had established pretext. PID 509. Contrary to Martis's argument, even if the Arbitrator found pretext, that would not *require* a finding of unlawful discrimination or retaliation, but rather, a permissive inference of discrimination and retaliation would arise. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146 (2000) ("The factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff."); *Smith v. Mosaica Ed., Inc.*, No. 269576, 2007 WL 677755, at *5 (Mich. Ct. App., Mar. 6, 2007) (applying *Reeves*). Martis still bore the burden of establishing that unlawful discrimination or retaliation *actually motivated* DISH to discharge him. *See Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 522 n.8 (Mich. 2001) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") The district court did not err in determining that the Arbitrator properly followed Michigan law by requiring Martis to establish the latter. PID 510.