******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

LAVERY, J., with whom SHELDON, J., joins, dissenting. I respectfully dissent from the majority's conclusion that the thirty day limitation period set forth in General Statutes § 52-420,[1] rather than the parties' contractual agreement to follow the three month period contained in the Federal Arbitration Act (FAA), 9 U.S.C. § 12 (2012),[2] controls the time frame within which the plaintiff, A Better Way Wholesale Autos, Inc., may file its application to vacate the arbitration award issued in favor of the defendants, James Saint Paul and Julie J. Saint Paul. Such a conclusion is contrary to the terms set forth in the parties' privately agreed upon arbitration clause in the parties' automobile financing agreement. Because I would hold that the terms of the parties' arbitration agreement govern, I respectfully dissent. See *Doctor's Associates, Inc.* v. *Searl*, 179 Conn. App. 577, 585–86, 180 A.3d 996 (2018) (in accordance with parties' contractually agreed upon terms, FAA governed time period for filing motion to vacate arbitration award).

The facts are undisputed and aptly stated by the majority. I emphasize, however, that the parties' financing agreement contains a choice of law provision specifying that "[a]ny arbitration . . . shall be governed by the [FAA] (9 U.S.C. § 1 et seq. [2012]) and not . . . any state law concerning arbitration." Despite the clear language of the parties' contract, the trial court applied, and the majority affirms, the thirty day limit to file a motion to vacate, pursuant to state law.[3]

Moreover, the parties agreed to be bound by the FAA in its entirety. Namely, the parties' agreement includes § 2 of the FAA, which binds state courts to render agreements to arbitrate "valid, irrevocable, and enforceable."[4] 9 U.S.C. § 2 (2012); see also *Vaden* v. *Discover Bank*, 556 U.S. 49, 71, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009) (in accordance with § 2 of FAA, both state and federal courts are obligated to honor and enforce agreements to arbitrate), superseded by statute in part on other grounds as stated in *Vermont* v. *MPHJ Technology Investments, LLC*, 803 F.3d 635, 643–44 (Fed. Cir. 2015), cert. denied, U.S. , 136 S. Ct. 1658, 194 L. Ed. 2d 766 (2016), and cert. denied, *MPHJ Technology Investments, LLC* v. *Vermont*, U.S. , 136 S. Ct. 1660, 194 L. Ed. 2d 766 (2016). The majority's decision undercuts the arbitration terms as agreed upon by the parties.

The United States Supreme Court has recognized that it is incumbent upon states to honor the terms that the parties set forth in their arbitration agreement. See, e.g., *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U.S. 1, 22 n.27, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). In *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior*

*University*, 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989), the United States Supreme court concluded that the FAA preempts application of state laws that render arbitration agreements unenforceable. The court determined that arbitration is strictly a matter of contract and, therefore, parties should be "at liberty to choose the terms under which they will arbitrate." (Internal quotation marks omitted.) Id., 472. "Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate . . . so too may they specify by contract the rules under which that arbitration will be conducted." (Citation omitted.) Id., 479. The court, in essence, emphasized that the overarching national policy goal behind the FAA was not just to enforce the parties' contractual right to arbitrate, but, moreover, was to uphold the enforcement of stipulated obligations in the parties' arbitration agreement itself.

Following *Volt Information Sciences, Inc.*, the United States Supreme Court continually has recognized contractual freedom as the FAA's bedrock principle. See *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (parties' arbitration agreement contractual provisions govern which entity, court or arbitrator, shall decide whether condition precedent to arbitration has been fulfilled); *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) (question of whether court or arbitrator has primary ability to decide arbitrability is determined by contractual agreement); *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) (contract between securities brokerage firm and customers permitted arbitration panel to award punitive damages to customers when arbitration clause was governed by rules of National Association of Securities Dealers, which permitted such award, despite agreement that New York law, prohibiting award of punitive damages, otherwise governed contract). Parties, therefore, generally are free to tailor their arbitration contract as they see fit. This court's decision in *Doctor's Associates, Inc.* v. *Searl*, supra, 179 Conn. App. 577, was consistent with that principle.[5]

Accordingly, I would not hold that state law governs the arbitration agreement unless the parties express "a clear intent to incorporate state law rules for arbitration." (Internal quotation marks omitted.) *Fidelity Federal Bank, FSB* v. *Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004); see also *Martis* v. *Dish Network Service, L.L.C.*, 597 Fed. Appx. 301, 304 (6th Cir. 2015) (whether FAA or Michigan law applied resolved in favor of federal standard even though Michigan law governed arbitrator's substantive decision); *Johnson* v. *Gruma Corp.*, 614 F.3d 1062, 1067 (9th Cir. 2010) ("where the FAA's

rules control arbitration proceedings, a reviewing court must also apply the FAA standard for vacatur"); see *Kim-C1, LLC* v. *Valent Biosciences Corp.*, 756 F. Supp. 2d 1258, 1261–62 (E.D. Cal. 2010); *New England Utilities* v. *Hydro-Quebec*, 10 F. Supp. 2d 53, 60–61 (D. Mass. 1998).

I do not mean to say that the FAA preempts the General Statutes regarding arbitration. That would be contrary to clear United States Supreme Court precedent. See *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, supra, 489 U.S. 477. The parties, however, chose the FAA as the governing law. Because an "arbitration provision in an agreement is effectively an agreement that is separate and distinct from the broader contract"; *MBNA America Bank, N.A.* v. *Boata*, 283 Conn. 381, 386, 926 A.2d 1035 (2007); and we must give effect to the parties' intent; *Levine* v. *Advest, Inc.*, 244 Conn. 732, 745–46, 714 A.2d 649 (1998); I cannot see how we would not enforce the parties' agreement that § 12 of the FAA governs the time limit to file a motion to vacate.

The majority, however, declines to enforce § 12 of the FAA, reasoning that our state courts must follow state procedural rules. Although acknowledging that the substantive law of the FAA applies in both state and federal court; see *Vaden* v. *Discover Bank*, supra, 556 U.S. 59; the majority maintains that the FAA does not preempt state procedural rules. Reasoning that our courts have considered § 52-420 (b) to be procedural and subject matter jurisdictional, the majority concludes that the thirty day limitation period set forth therein is not preempted by the FAA.

In support of its conclusion that § 52-420 (b) is procedural, the majority cites to a string of cases in which our courts have understood § 52-420 in the context of subject matter jurisdictional claims, but none of which involved a choice of law claim or a dispute as to which law governed the given arbitration agreement. See *Wu* v. *Chang*, 264 Conn. 307, 308, 823 A.2d 1197 (2003) ("sole issue raised by this appeal is whether a claim of fraud tolls the thirty day period within which a motion to vacate an arbitration award must be filed pursuant to General Statutes § 52-420 [b]"); *Vail* v. *American Way Homes, Inc.*, 181 Conn. 449, 450, 435 A.2d 993 (1980) (sole issue was enforceability of arbitration award ordering specific performance of construction contract for private dwelling); *Rosenthal Law Firm, LLC* v. *Cohen*, 165 Conn. App. 467, 470, 139 A.3d 774 (rejecting claims that court incorrectly concluded that application to vacate was untimely under § 52-420 [b] on basis of due process deprivation; allegation that arbitration panel failed to consider defendant's testimony and evidence; erroneous factual findings; and award was contrary to public policy), cert. denied, 322 Conn. 904, 138 A.3d 933 (2016); *Petrucelli* v. *Travelers Prop-*

*erty Casualty Ins. Co.*, 146 Conn. App. 631, 633, 79 A.3d 895 (2013) (rejecting claim that court erred in concluding that it lacked subject matter jurisdiction under § 52-410), cert. denied, 311 Conn. 909, 83 A.3d 1164 (2014). Operating under the assumption that § 52-420 is procedural, the majority then reasons that parties cannot waive or otherwise contract around this statute. I do not agree with the majority's distinction between procedure and substance.

The mere fact that § 52-420 sets a time limitation does not compel the conclusion that it is procedural and, therefore, subject matter jurisdictional. The United States Supreme Court has characterized such provisions differently. Namely, in *Scarborough* v. *Principi*, 541 U.S. 401, 413–14, 124 S. Ct. 1856, 158 L. Ed. 2d 674 (2004), the United States Supreme Court concluded that the time bar for filing a fee application set forth under the Equal Access to Justice Act, 28 U.S.C. § 2412 (d) (1) (B) (2012), did not concern the federal courts' subject matter jurisdiction. The court reasoned that the time limitation pertained to postjudgment proceedings auxiliary to a matter already within the court's adjudicatory authority. *Scarborough* v. *Principi*, supra, 414.

Following this rationale, at least one court has set forth a compelling argument that the time limitation set forth in § 12 of the FAA is substantive, not procedural or jurisdictional. In *Equitas Disability Advocates, LLC* v. *Daley, Debofsky & Bryant, P.C.*, 177 F. Supp. 3d 197, 218 (D.D.C.), aff'd, 672 Fed. Appx. 13 (D.C. Cir. 2016), the court considered, in relevant part, whether an application to vacate was timely served under § 12 of the FAA. In light of United States Supreme Court precedent indicating that "time prescriptions, however emphatic, are not properly typed jurisdictional in the sense of restricting courts' subject-matter jurisdiction," the court concluded that a question as to the timeliness for filing the motion to vacate the arbitral award did not concern the court's jurisdiction. (Internal quotation marks omitted.) Id., quoting *Arbaugh* v. *Y & H Corp.*, 546 U.S. 500, 510, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); see also *Craig* v. *Southwest Securities, Inc.*, Docket No. 05-16-01378-CV (BLG), 2017 WL 6503213, *2 (Tex. App. December 18, 2017) ("[s]ection 12 [of the FAA] provides a substantive three-month limitations period").

Additionally, *Equitas Disability Advocates, LLC*, noted that Congress has not specifically qualified the FAA as jurisdictional and, therefore, courts should treat any restrictions as to timeliness set forth therein as nonjurisdictional. *Equitas Disability Advocates, LLC* v. *Daley, Debofsky & Bryant, P.C.*, supra, 177 F. Supp. 3d 218; see also *Arbaugh* v. *Y & H Corp.*, supra, 546 U.S. 516 (threshold number of employees set forth in statute not jurisdictional in nature).

Applying these principles to § 52-420, I am not con-

vinced that this statute necessarily is procedural and, therefore, subject matter jurisdictional. The majority acknowledges that "[a]rbitration proceedings, including court proceedings to compel arbitration are creatures of statute in Connecticut and are not common law actions"; (internal quotation marks omitted) *Bennett* v. *Meader*, 208 Conn. 352, 357, 545 A.2d 553 (1988); and that "[t]he right to review an arbitration award is wholly encompassed within the parameters of [General Statutes] § 52-418 . . . [which] goes beyond the common law and provides additional grounds upon which to vacate an award." Id., 356–57. If we accept those premises, then the thirty day limitation could be considered an element necessary to establish a right, and, therefore, substantive in nature. See *Baxter* v. *Sturm, Ruger & Co.*, 230 Conn. 335, 340–41, 644 A.2d 1297 (1994); id., 340 ("[a] limitation period is considered 'one of the congeries of elements necessary to establish the right,' and therefore characterized as substantive, only when it applies to a new right created by statute"); but see *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 529, 294 A.2d 633 (1972) ("the general rule [is] that a time limitation on the enforcement of a right, created by statute and not existing at common law, is a part of the right and must be met in order to provide a court with jurisdiction to hear the cause of action"); see also *Ecker* v. *West Hartford*, 205 Conn. 219, 233, 530 A.2d 1056 (1987) (deeming wrongful death action jurisdictional under this general rule). Further, in *Ekstrom* v. *Value Health, Inc.*, 68 F.3d 1391, 1395 (D.C. Cir. 1995), the court, citing to our state precedent, held that § 52-420 is substantive because "[u]nder Connecticut law . . . jurisdictional time limits are not subject to waiver . . . ." It remains uncertain, therefore, that § 52-420 (b) is procedural.

The majority, nonetheless, posits that the principle of legislative acquiescence compels the conclusion that § 52-420 properly may be considered procedural. As support, the majority cites *Angersola* v. *Radiologic Associates of Middletown, P.C.*, 330 Conn. 251, 193 A.3d 520 (2018). In *Angersola*, our Supreme Court directed the parties to file supplemental briefs to address the question, inter alia, of whether strong evidence existed as to legislative intent to overcome the presumption that the statutorily created rights under General Statutes § 52-555 were jurisdictional in nature. Id., 266. The court, in reaching its decision on this question, acknowledged that tension exists "between a trial court's jurisdiction and its authority to act under a particular statute." (Internal quotation marks omitted.) Id., 267. In accordance with the principle of legislative acquiescence, the court reasoned that "[o]nce an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the

merits of our earlier decision . . . ." (Citation omitted; internal quotation marks omitted.) Id., 267–68. Noting that the legislature had never, in thirty years, seen fit to overrule the court's conclusion that compliance with the repose period is a jurisdictional requirement, the court concluded that the legislature had acquiesced to such characterization, and, therefore, the court concluded that it was appropriate to consider § 52-555 as a jurisdictional requirement. Id., 268.

The majority's analysis, and that provided in *Angersola*, presume that the legislature's inactivity is sufficient to establish legislative acquiescence. That analysis, however, is incomplete. "[T]he legislative acquiescence doctrine requires actual acquiescence on the part of the legislature. [Thus] [i]n most of our prior cases, we have employed the doctrine not simply because of legislative inaction, but because the legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue. . . . In other words, [l]egislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute." (Citation omitted; quotation marks omitted.) *State* v. *Salamon*, 287 Conn. 509, 525, 949 A.2d 1092 (2008); see also *Berkley* v. *Gavin*, 253 Conn. 761, 777 n.11, 756 A.2d 248 (2000) (legislative acquiescence requires actual acquiescence by legislature), superseded by statute in part on other grounds as stated in *Estate of Brooks* v. *Commissioner of Revenue Services*, 325 Conn. 705, 716, 159 A.3d 1149 (2017).

Here, there is no evidence in the record that the legislature affirmatively has amended § 52-420 without choosing to address whether it is jurisdictional or substantive in nature. Moreover, it is not clear that any characterization of this statute as procedural and subject matter jurisdictional is accurate. I, therefore, would not conclude that the legislature has acquiesced to any language from the precedent the majority cites for the proposition that the time limitation in § 52-420 is procedural and subject matter jurisdictional.

In honoring the contractual freedom afforded to parties under the FAA, I would enforce the terms set forth in the parties' arbitration agreement. I, therefore, would hold that § 12 of the FAA, rather than § 52-420 of the General Statutes, governs the parties' motion to vacate and that our precedent in *Doctor's Associates, Inc.* v. *Searl*, supra, 179 Conn. App. 577, be upheld.

Accordingly, I respectfully dissent.

[1] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

[2] Section 12 of title 9 of the 2012 edition of the United States Code provides in relevant part: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. . . ."

[3] In its memorandum of decision, the court incorrectly stated that § 12 of the FAA did not apply because the plaintiff, pursuant to § 9 of the FAA,

"was free to bring this application in the Connecticut federal district court where the longer, three month limitation applies." Section 9 of the FAA provides in relevant part that "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. . . ." Section 9 of the FAA, however, does not confer subject matter jurisdiction in federal courts but, instead, "provide[s] an additional procedure and remedy . . . where jurisdiction already exists." (Internal quotation marks omitted.) *Metal Products Workers Union, Local 1645, UAW-AFL-CIO* v. *Torrington Co.*, 242 F. Supp. 813, 819 (D. Conn. 1965), aff'd, 358 F.2d 103 (2d Cir. 1966).

On this point, the United States Supreme Court has characterized the FAA as an "anomaly" in the area of federal jurisdiction, as "[the FAA] creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction . . . ." *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Accordingly, the court mistakenly referred to § 9 of the FAA as the source of federal jurisdiction in the present case.

Instead, the parties had federal question jurisdiction by virtue of their claim under the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. (2012). The parties otherwise did not have federal question or diversity jurisdiction. Accordingly, if the parties did not have their Federal Truth in Lending Act claim, then the court's decision not to enforce their agreement to follow § 12 of the FAA would have left them without the option to bring a motion to vacate after thirty days, despite their clearly agreed upon three month time frame.

[4] Section 2 of title 9 of the 2012 edition of the United States Code provides: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

[5] In *Doctor's Associates, Inc.*, the parties, in their contract, agreed that the FAA governed disputes concerning the enforceability of the arbitration clause therein. *Doctor's Associates, Inc.* v. *Searl*, supra, 179 Conn. App. 585. This court upheld the parties' agreement to apply the FAA. Id., 585–86.