******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DOCTOR'S ASSOCIATES, INC. *v.* SUSAN E.
SEARL ET AL.
(AC 38482)

Alvord, Sheldon and Bishop, Js.

*Syllabus*

The plaintiff filed an application to confirm an arbitration award issued in
its favor in connection with the defendants' alleged breach of a franchise
agreement between the parties regarding the defendants' operation of
a certain restaurant. The agreement stated that it was governed by
Connecticut law except as otherwise provided in the agreement. A
provision in the agreement's arbitration clause specified that federal
law preempted any state law restrictions on the enforcement of that
clause. The defendants filed an objection to the plaintiff's application
and subsequently filed an answer and a special defense seeking to vacate
the award, which the parties and the court treated as a motion to vacate.
The defendants alleged, inter alia, that they did not receive notice of the
arbitration proceeding, and, therefore, the award was not enforceable
against them. The trial court, applying Connecticut law, refused to con-
sider the defendants' motion to vacate on the ground that it was untimely
and rendered judgment granting the plaintiff's application to confirm
the arbitration award. On the defendants' appeal to this court, *held* that
the trial court should have applied federal law, instead of Connecticut
law, in determining the timeliness of the defendants' motion to vacate
the arbitration award: when the franchise agreement's choice of law
clause was read in light of the arbitration clause, it was clear that
although, generally, Connecticut law governed the terms of the
agreement, federal law governed the procedures used to enforce the
arbitration clause, as the parties, by agreeing that federal law preempted
any state law restrictions on the enforcement of the arbitration clause,
made clear that federal law governed the procedures by which the
arbitration clause was enforced and, thus, governed the procedure for
moving to vacate the arbitration award, and application of Connecticut
law would have contradicted the parties contractual intent to use federal
law as expressly agreed to in the franchise agreement; accordingly, the
defendants were entitled to a hearing to determine whether they timely
moved to vacate the arbitration award under the statutory time limit
provided for in federal law, and if so, to address the merits of that motion.

Argued October 23, 2017—officially released February 6, 2018

*Procedural History*

Application to confirm an arbitration award, brought
to the Superior Court in the judicial district of Ansonia-
Milford, where the defendants filed an objection; there-
after, the defendants filed an answer and a special
defense seeking to vacate the award; subsequently, the
court, *Tyma, J.*, granted the application to confirm the
award and rendered judgment thereon, from which the
defendants appealed to this court. *Reversed*; *further
proceedings*.

*Scott T. Garosshen*, with whom were *Karen L. Dowd*
and, on the brief, *Kimberly A. Knox*, for the appel-
lants (defendants).

*Frank J. Mottola III*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendants, Susan E. Searl and Randy A. Searl, doing business as Subway store number 34648,[1] appeal from the judgment of the trial court, effectively dismissing their motion to vacate an arbitration award for lack of subject matter jurisdiction and granting the application of the plaintiff, Doctor's Associates, Inc., to confirm that award. On appeal, the defendants claim that the court should have applied federal law, or alternatively New York law, instead of Connecticut law, in determining whether they timely filed their motion to vacate. We conclude that the court should have applied federal law in determining the timeliness of the defendants' motion to vacate and, accordingly, reverse the judgment of the trial court and remand the case for further proceedings.[2]

The following facts and procedural history are relevant to this appeal. The defendants owned and operated three Subway restaurant franchises under separate franchise agreements. Only one of the defendants' stores, store number 34648 (store), and the franchise agreement for that store (franchise agreement), are at issue in this case. In October, 2013, the plaintiff notified the defendants that they were noncompliant with certain requirements of the franchise agreement regarding their operation of the store. In February, 2014, the parties entered into a probationary agreement, which provided that if the defendants were compliant with the franchise agreement for three months, they would be reinstated as franchisees of the store.

On April 3, 2014, the plaintiff filed a demand for arbitration with the American Dispute Resolution Center (center), claiming that the defendants had breached the franchise and probationary agreements. The defendants received notice of the plaintiff's initiation of the arbitration proceeding even though the mailing address on the notice was incorrect. On May 1, 2014, Susan Searl contacted the plaintiff to discuss the arbitration and spoke to Jill Fernandez, a case manager in the plaintiff's office. Fernandez explained that the defendants "would be receiving further information regarding the arbitration process, the selection of an arbitrator, and the scheduling of a hearing date," and that they should "expect to receive further documentation in June or July [2014]." Fernandez also explained that the defendants "did not need to make any further decisions or take any further actions until [they] received the information regarding the process for selecting an arbitrator."

On June 20, 2014, the arbitrator found in favor of the plaintiff and issued an award in its favor. The defendants received notice of the award "as early as June 26, 2014, and no later than July 1, 2014." Along with the notice of the award, the defendants received, *for the*

*first time*, notice regarding the selection of an arbitrator and the deadline for the submission of evidence in the arbitration proceeding. A representative from the center informed Susan Searl that the reason the defendants had not received any communications from the center between April and June, 2014, was that "the *plaintiff* [had] provided the [center] with the wrong address." (Emphasis added.) On June 26, 2014, a representative of the plaintiff informed the defendants that, in light of the arbitrator's award, there was nothing they could do "other than sell or close [the store]."

The plaintiff filed an application to confirm the arbitration award in the Superior Court on August 8, 2014. On September 4, 2014, the defendants, representing themselves, filed a pleading entitled "Objection to Confirmation Award."[3] This pleading explained that the defendants had never received notice of the arbitration hearing date and included numerous notes detailing arguments the defendants would have made had they been given the opportunity to present their case to the arbitrator. On October 3, 2014, the defendants, having retained counsel, filed an "Answer and Affirmative Defenses" in response to the plaintiff's application to confirm the arbitration award. In that pleading, which the parties treated as a motion to vacate the award, the defendants similarly alleged that they had not received notice of the arbitration proceeding, had not had an opportunity to present evidence, and did not learn that the arbitration hearing had taken place until after the arbitrator had issued the award in favor of the plaintiff.

On October 9, 2014, the plaintiff filed a motion to dismiss the "Objection to Confirmation Award" and the "Answer and Affirmative Defenses," arguing that the court lacked subject matter jurisdiction because the filings had not been made within the thirty day time period for moving to vacate an arbitration award provided by General Statutes § 52-420 (b).[4] The defendants responded that the Federal Arbitration Act (act), 9 U.S.C. § 1 et seq., governed the enforcement of the arbitration award and that their objection to the arbitration award was sufficiently asserted within the three month time period following the issuance of the award prescribed by the act.[5] Alternatively, the defendants argued that, if federal law did not apply, the court should apply New York law.[6] Additionally, the defendants maintained that they "had meritorious defenses to the plaintiff's demand for arbitration, but they were not given notice or an opportunity to be heard."

On September 15, 2015, the trial court issued a memorandum of decision in which it (1) denied the plaintiff's motion to dismiss, (2) refused to consider the defendants' special defense seeking to vacate the arbitration award on the ground that it was untimely, and (3) granted the plaintiff's application to confirm the arbitration award. The court concluded that the act was not

controlling in the present case because the general choice of law provision in the parties' franchise agreement established that Connecticut law governed. The court also rejected the defendants' alternative argument that New York law should apply. Instead, the court applied Connecticut law. Reasoning that the defendants did not move to vacate the arbitration award within thirty days of their receipt of the award, as Connecticut law requires; see footnote 4 of this opinion; the court concluded that the defendants' motion was untimely, and thus it granted the plaintiff's application to confirm the arbitration award. This appeal followed.

The defendants claim that the arbitration award in favor of the plaintiff is unenforceable because they did not receive adequate notice of the arbitration proceeding. The defendants assert that, without notice of the proceeding, the arbitration award is not enforceable against them. The defendants maintain that because the parties expressly agreed that the act "preempts any state law restrictions . . . on the enforcement of the arbitration clause in [the franchise agreement]," the court should have applied federal law or, alternatively, New York law, when determining whether the defendants timely filed their motion to vacate. In response, the plaintiff argues that the franchise agreement's general choice of law clause clearly requires application of Connecticut law. We agree with the defendants and conclude that the court should have applied federal law.

"We review a [trial] court's decision to confirm or vacate an arbitration award de novo on questions of law and for clear error on findings of fact." *National Football League Management Council* v. *National Football League Players Assn.*, 820 F.3d 527, 536 (2d Cir. 2016); see also *Henry* v. *Imbruce*, 178 Conn. App. 820, 828, A.3d (2017) (same). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . .

"In accordance with this principle, our recent cases have held, in a number of different contexts, that the contract language at issue was so definitive as to make the interpretation of that language a question of law subject to plenary review by this court." (Citations omitted; internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iriquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000). In our view, the terms of the franchise agreement are clear and unambiguous; therefore, interpretation of this contract presents a question of law subject to plenary review. See *JSA Financial Corp.* v. *Quality Kitchen Corp. of Delaware*, 113 Conn. App. 52, 59, 964 A.2d 584 (2009).

"The individual clauses of a contract . . . cannot be construed by taking them out of context and giving

them an interpretation apart from the contract of which they are a part. . . . A contract should be construed so as to give full meaning and effect to *all of its provisions* . . . . [T]he language of the choice of law portion of the parties' agreement cannot be read in isolation, but instead must be considered in light of the language of the arbitration portion." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Levine* v. *Advest, Inc.*, 244 Conn. 732, 753, 714 A.2d 649 (1998). Moreover, it is a well established principle of contract interpretation that "the particular language of a contract must prevail over the general." (Internal quotation marks omitted.) *Israel* v. *State Farm Mutual Automobile Ins. Co.*, 259 Conn. 503, 511, 789 A.2d 974 (2002).

Furthermore, "[a]ll parties in an arbitration proceeding are entitled to notice and an opportunity to be heard. . . . Parties must be allowed to present evidence without unreasonable restriction . . . and must be allowed to confront and cross-examine witnesses. . . . Where a party to an arbitration does not receive a full and fair hearing on the merits, a [trial] court will not hesitate to vacate the award. . . . In [such] cases, vacatur of the award [is] justified [where] the lack of notice or denial of an opportunity to be heard involve[s] the merits of the controversy." (Citations omitted; internal quotation marks omitted.) *Konkar Maritime Enterprises, S.A.* v. *Compagnie Belge D'Affretement*, 668 F. Supp. 267, 271 (S.D.N.Y. 1987); see also *CEEG (Shanghai) Solar Science & Technology Co., Ltd.* v. *LUMOS LLC*, 829 F.3d 1201, 1206 (10th Cir. 2016) ("[n]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [arbitration] and afford them an opportunity to present their objections" [internal quotation marks omitted]).

In the present case, the defendants maintain that because they did not receive notice of the arbitration beyond the original demand, which did not contain the date, time, or place of the arbitration hearing, they were deprived of their opportunity to be heard, and as a result, the award is not enforceable against them. In its memorandum of decision, the court stated: "The parties do not dispute the enforceability or scope of the arbitration clause. As a result, paragraph 10 (f) of the [f]ranchise [a]greement is inapplicable to the present proceeding." We disagree.

Paragraph 10 (f) of the franchise agreement provides in relevant part: "Any disputes concerning the enforceability . . . of the arbitration clause shall be resolved pursuant to the [act] . . . and *the parties agree that the [act] preempts any state law restrictions . . . on the enforcement of the arbitration clause in this Agreement*." (Emphasis added.) By agreeing that the act preempts any state law restrictions on the enforcement of the arbitration clause, the parties have made

clear that federal law governs the procedures by which the arbitration clause contained in the franchise agreement is to be enforced.[7] It necessarily follows that the procedure for moving to vacate an arbitration award is governed by federal law. Application of Connecticut's statute of limitations for filing a motion to vacate, pursuant to § 52-420 (b), would contradict the parties contractual intent to use federal law, as expressly agreed to in the franchise agreement.[8]

We acknowledge that the parties agreed that Connecticut law would govern the franchise agreement. Paragraph 13 of the franchise agreement states in relevant part: "The Agreement will be governed by and construed in accordance with the substantive laws of the State of Connecticut, without reference to its conflicts of law, *except as may otherwise be provided in this Agreement.*" (Emphasis added.) The franchise agreement did, in fact, provide otherwise when it specified, in paragraph 10 (f), that the act preempted any state law restrictions on the enforcement of the arbitration clause. As our Supreme Court has instructed, we must give effect to each provision of the parties' agreement and not read the choice of law clause in isolation from the arbitration clause; see *Levine* v. *Advest, Inc.*, supra, 244 Conn. 753; and particular language in a contract must prevail over general. See *Miller Bros. Construction Co.* v. *Maryland Casualty Co.*, 113 Conn. 504, 514, 155 A. 709 (1931).

When the general choice of law clause of the franchise agreement is read in light of the arbitration clause, it becomes clear that although, generally, Connecticut law governs the terms of the agreement, federal law governs the procedures used to enforce the arbitration clause.[9] Compare, e.g., *Smith Barney, Harris Upham & Co.* v. *Luckie*, 85 N.Y.2d 193, 202, 647 N.E.2d 1308, 623 N.Y.S.2d 800 (concluding that when choice of law clause explained "that New York law would govern the agreement *and its enforcement,*" parties intended to "arbitrate to the extent allowed by [New York] law" [emphasis in original; internal quotation marks omitted]), cert. denied sub nom. *Manhard* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 516 U.S. 811, 116 S. Ct. 59, 133 L. Ed. 2d 23 (1995), with *N.J.R. Associates* v. *Tausend*, 19 N.Y.3d 597, 602, 973 N.E.2d 730, 950 N.Y.S.2d 320 (2012) (concluding that question of timeliness "must be resolved by an arbitrator under [the act's] principles" where choice of law clause provided only that "the Agreement shall be governed by, and construed in accordance with, the laws and decisions of the State of New York," and "[did] not include the critical enforcement language" [internal quotation marks omitted]). We conclude, therefore, that the defendants are entitled to a hearing to determine whether they timely moved to vacate the arbitration award under the statutory time limit provided in the act. See footnote 5 of this opinion. If the defendants did comply with the

limitations period provided by federal law, the court shall then reach the merits of the defendants' motion to vacate the arbitration award.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other judges concurred.

[1] We refer in this opinion to the Searls collectively as the defendants and to Susan Searl individually by name where appropriate.

[2] We note that although the defendants now have closed the Subway store at issue, the appeal is not moot because they have incurred approximately $300,000 in fines during this litigation, which the plaintiff is pursuing as a penalty for their continued operation of the store.

[3] The court did not address this pleading in its memorandum of decision. On remand, however, the court must determine whether this pleading was, in effect, the defendants' first motion to vacate the arbitration award.

[4] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

[5] Under federal law, the statute of limitations for moving to vacate, modify, or correct an arbitration award is set forth in 9 U.S.C. § 12, which provides in relevant part: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. . . ."

[6] Under New York law, the statute of limitations for moving to vacate or modify an arbitration award is set forth in New York Civil Practice Law and Rules § 7511 (a), which provides in relevant part: "An application to vacate or modify an award may be made by a party within ninety days after its delivery to him."

[7] Several cases explain that the act does not preempt state procedural rules governing the conduct of arbitration, so long as the state procedural rule does not undermine the goals of the act. See *Moscatiello* v. *Hilliard*, 939 A.2d 325, 329 (Pa. 2007) ("[t]he [act] does not preempt the procedural rules governing arbitration in state courts, as that is beyond its reach"); *Joseph* v. *Advest, Inc.*, 906 A.2d 1205, 1209–10 (Pa. Super. 2006) ("the broad reach of the [act] will not extend so far as to preempt the procedural rules of state proceedings because there is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate" [internal quotation marks omitted]); *Sultar* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Superior Court, judicial district of New Britain, Docket No. CV-04-0527411-S (October 13, 2004) (38 Conn. L. Rptr. 108) (applying Connecticut law and not federal law to determine timeliness of motion to vacate because Connecticut law "does not conflict with the primary purpose of the [act], which is to encourage arbitration to the fullest scope of the parties' agreement to arbitrate"). Here, unlike the cases cited, the parties expressly agreed in the franchise agreement that federal law preempted the state law procedures used to enforce the arbitration clause. Therefore, federal law should have been used to determine whether the defendants timely filed their motion to vacate. See, e.g., *Ungerland* v. *Morgan Stanley & Co.*, 52 Conn. Supp. 164, 172–73, 35 A.3d 1095 (2010) ("[t]he exception to the use of Connecticut procedural arbitration laws by a Connecticut court is when the parties have agreed . . . in an arbitration agreement . . . to abide by the law of a particular [jurisdiction]").

[8] The court's reliance on *Hotz Corp.* v. *Carabetta Builders, Inc.*, Superior Court, judicial district of New Haven, Docket Nos. CV-91-0318394-S and CV-91-0318936-S (November 29, 1991) is misplaced. In *Hotz*, the court relied on the United States Supreme Court's decision in *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989), for the principle that "the [act] does not preempt this state's arbitration rules in that the parties have agreed to abide by Connecticut law to the exclusion of federal arbitration law . . . ." Id., 479; *Hotz Corp.* v. *Carabetta Builders, Inc.*, supra. The defendants' argument in the present case, however, is not that the act, in general, preempts Connecticut law. Rather, they argue that, pursuant to the language of the franchise agreement, the parties agreed that federal law governs, thereby rendering inapplicable any state law restrictions regarding the enforcement of the arbitration clause. In sum, we do not deviate from the established precedent that holds that the act does not preempt state

law where the parties agreed to abide by state arbitration rules. In this case, the parties expressly intended and contracted that federal law would apply to any disputes regarding the enforcement of the arbitration clause.

[9] Although not binding on this court, the Superior Court decision in *Sultar* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Superior Court, judicial district of New Britain, Docket No. CV-04-0527411-S (October 13, 2004) (38 Conn. L. Rptr. 108), is instructive. In *Sultar*, the parties signed an investment contract that contained both a choice of law clause and an arbitration clause. Id. The choice of law clause established that New York law would apply to the enforcement of the investment contract. Id. The parties did not specify which law would govern the arbitration clause, i.e., the parties did not specify whether federal law preempted state law regarding the enforcement of the arbitration clause. Id. The court concluded that the choice of law clause did not demonstrate which state's law the parties intended to apply to the plaintiff's motion to vacate the arbitration award. Id. The court explained that the choice of law clause "merely provides that the law of the state of New York applies to the enforcement of the agreement," and when read in light of the arbitration clause, the "provisions do not allow for an interpretation that the parties intended New York law to apply to the process of vacating the [arbitration] award." Id. The court applied Connecticut law because, with no agreement specifying to do otherwise, the court applied the law of the jurisdiction in which the motion to vacate was filed. Id.

In the present case, the general choice of law clause does not demonstrate which law to apply to a motion to vacate an arbitration award, however, the parties specified in paragraph 10 (f) of the franchise agreement that federal law preempted state law regarding the enforcement of the arbitration clause, which includes the process of vacating an arbitration award. Accordingly, reading the general choice of law clause and the arbitration clause together provides for the conclusion that the parties intended to apply federal law to the process of vacating an arbitration award. The court, therefore, should have followed the limitations period provided by the act when determining whether the defendants timely filed their motion to vacate.

———————————