******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

A BETTER WAY WHOLESALE AUTOS, INC.
*v.* JAMES SAINT PAUL ET AL.
(AC 40014)

DiPentima, C. J., and Lavine, Sheldon, Keller, Elgo,
Bright, Moll and Lavery, Js.*

*Syllabus*

The plaintiff motor vehicle dealer sought to vacate an arbitration award
that was issued in favor of the defendants in connection with their
purchase of a vehicle from the plaintiff. The parties had entered into a
financing agreement that contained an arbitration provision stating that
any arbitration would be governed by the Federal Arbitration Act (9
U.S.C. § 1 et seq.) and not by any state law concerning arbitration. The
defendants thereafter filed a demand for arbitration, claiming that the
plaintiff had violated, inter alia, the Truth in Lending Act (15 U.S.C.
§ 1601 et seq.) when it required them to purchase certain contracts as
a condition of the financing agreement. After the arbitrator awarded
the defendants damages, attorney's fees and costs, the plaintiff filed in
the trial court an application to vacate the award within the three month
limitation period set forth in 9 U.S.C. § 12 to file an application to vacate,
but beyond the thirty day limitation period permitted under state law
(§ 52-420 [b]). The defendants thereafter filed an application to confirm
the award, which the plaintiff did not oppose, and for an award of
supplemental attorney's fees. The defendants also sought to dismiss the
plaintiff's application to vacate on the ground that the trial court lacked
subject matter jurisdiction because the application to vacate was not
timely filed pursuant to § 52-420 (b). The trial court dismissed the plain-
tiff's application to vacate as untimely, granted the defendants' applica-
tion to confirm the award and awarded the defendants supplemental
attorney's fees. On the plaintiff's appeal to this court, *held*:

1. The plaintiff's appeal was not moot despite the plaintiff's failure to file
an opposition to the defendants' application to confirm the award or
to address the application to confirm in its brief to this court; this court
could afford the plaintiff practical relief by reversing the trial court's
dismissal of the application to vacate pursuant to statute (§ 52-417), as
the question of mootness was inextricably intertwined with the plaintiff's
claim that its application to vacate was improperly dismissed on timeli-
ness grounds.

2. The trial court properly dismissed the plaintiff's application to vacate the
arbitration award as untimely: the parties could not, as a matter of law,
agree to have the three month limitation period in 9 U.S.C. § 12 apply
to a vacatur proceeding in Connecticut state court so as to supplant or
override the thirty day limitation period in § 52-420 (b), which is subject
matter jurisdictional in nature and applicable to any application to vacate
an arbitration award brought in Connecticut state court; accordingly,
this court's decision in *Doctor's Associates, Inc.* v. *Searl* (179 Conn.
App. 577) was overruled insofar as it stands for the proposition that
parties can, as a matter of law, agree, by way of a choice of law provision,
to apply the three month limitation period in 9 U.S.C. § 12 to a vacatur
proceeding brought in Connecticut state court.

3. Although the trial court erred when it reviewed the substance of the
application to vacate the arbitration award after it ruled that the applica-
tion should be dismissed, as the court lacked subject matter jurisdiction
over the application to vacate, any error in its consideration of the
plaintiff's application's in connection with its consideration of the defen-
dants' application to confirm was harmless, as the court properly dis-
missed the plaintiff's application as untimely and confirmed the award.

4. The trial court did not abuse its discretion in awarding the defendants
supplemental attorney's fees; that court was not required to adopt the
findings of another trial court regarding the reasonableness of the hourly
rates that were requested by the defendants' counsel, and the plaintiff's
claim that no reasonable client would consider paying the hourly fee
charged by the defendants' counsel was unavailing, as that argument
lacked any citation to the record or to legal authority and was little

more than the ipse dixit of the plaintiff's counsel.
(*Two judges dissenting in one opinion*)

Argued May 21 and October 10, 2018—officially released September 3, 2019

*Procedural History*

Application to vacate an arbitration award, brought to the Superior Court in the judicial district of Waterbury, where the defendants filed motions to confirm the award and for attorney's fees, and to dismiss the application to vacate the award; thereafter, the matter was tried to the court, *M. Taylor, J.*; judgment dismissing the application to vacate, and granting the motions to confirm and for attorney's fees, from which the plaintiff appealed to this court. *Affirmed.*

*Kenneth A. Votre*, for the appellant (plaintiff).

*Richard F. Wareing*, with whom was *Daniel S. Blinn*, for the appellees (defendants).

*Opinion*

MOLL, J. The plaintiff, A Better Way Wholesale Autos, Inc., appeals from the judgment of the trial court dismissing its application to vacate an arbitration award issued in favor of the defendants, James Saint Paul and Julie J. Saint Paul, and granting the defendants' application to confirm the arbitration award. On appeal, the plaintiff contends that the court improperly (1) dismissed its application to vacate as untimely, (2) engaged thereafter in a review of the substance of the plaintiff's application to vacate and concluded that the arbitration award did not manifest an egregious or patently irrational application of the law, and (3) awarded the defendants $2185 in supplemental attorney's fees. We conclude that the court properly dismissed the plaintiff's application to vacate as untimely and did not abuse its discretion in awarding supplemental attorney's fees. In light of our conclusion that the court properly dismissed the plaintiff's application to vacate as untimely, we also conclude that the court erred by reviewing the substance of the application but that such error was harmless. Accordingly, we affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. In early 2015, the defendants purchased a motor vehicle from the plaintiff, a motor vehicle dealer located in Naugatuck. To finance their purchase, the defendants entered into a financing agreement with the plaintiff. The agreement contains an arbitration provision that provides, in part, that any dispute arising out of or relating to the purchase of the defendants' vehicle shall be resolved by binding arbitration. The agreement also contains a general choice of law clause, which provides that "[f]ederal law and the law of the state of our address shown on the front of this contract apply to this contract." The front of the financing agreement shows an address in Naugatuck. The arbitration section of the financing agreement contains a specific choice of law provision, which provides in relevant part: "[1] Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act [(FAA)] (9 U.S.C. § 1 et seq. [2012]) and not by any state law concerning arbitration. [2] Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the [FAA]." The arbitration section further provides in part that "[a]ny court having jurisdiction may enter judgment on the arbitrator's award."

On December 15, 2015, the defendants filed an arbitration demand with the American Arbitration Association, claiming that the plaintiff required the defendants to purchase an oil change contract and a service contract as a condition of financing in violation of the federal Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq. (2012), and the Connecticut Unfair Trade Practices

Act, General Statutes § 42-110a et seq. On July 21, 2016, following an evidentiary hearing,[1] the arbitrator issued a so-called "unreasoned award" in favor of the defendants in the amount of $8797.81, which included $2297.81 in actual damages, $2000 in statutory damages under TILA, and $4500 in attorney's fees and costs. The arbitrator concluded that the plaintiff violated TILA by failing to include the oil change contract and the service contract in the finance charge disclosure provision of the agreement.

On August 26, 2016, the plaintiff filed in the Superior Court an application to vacate the arbitration award pursuant to the FAA, claiming therein that the arbitrator exceeded his powers. On September 28, 2016, pursuant to General Statutes § 52-417,[2] the defendants filed an omnibus "motion to confirm arbitration award, opposition to plaintiff's application to vacate arbitration award, and motion for supplemental attorney's fees" (application to confirm). On November 9, 2016, the defendants filed a supplemental memorandum of law in opposition to the plaintiff's application to vacate, arguing therein that the plaintiff's application to vacate should be dismissed for lack of subject matter jurisdiction because it was not timely filed pursuant to General Statutes § 52-420 (b) ("[n]o motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion"). On December 7, 2016, the plaintiff filed a memorandum of law in support of its application to vacate, which did not address the timeliness issue raised by the defendants.

On December 30, 2016, following a hearing, the trial court dismissed the plaintiff's application to vacate as untimely filed pursuant to § 52-420 (b) and granted the defendants' application to confirm, including the defendants' request therein for $2185 in supplemental attorney's fees under TILA. This appeal followed.[3] Additional facts will be set forth as necessary.

I

As a threshold matter, we address the defendants' claim that the plaintiff's appeal should be dismissed as moot. The defendants argue that, because the plaintiff failed to file in the Superior Court an opposition to their application to confirm and did not address in this court the application to confirm, this court can no longer grant the plaintiff any practical relief. We disagree.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . A case is considered moot if [the] court cannot grant . . . any practical relief through its disposition of the merits . . . ." (Internal quotation marks omitted.) *Glastonbury* v. *Metropolitan District Commission*, 328 Conn. 326, 333, 179 A.3d 201 (2018). "Because mootness impli-

cates our subject matter jurisdiction . . . it is a proper basis upon which to seek the dismissal of an appeal." (Citation omitted.) *Sovereign Bank* v. *Licata*, 178 Conn. App. 82, 96–97, 172 A.3d 1263 (2017).

In the present case, the question of mootness is inextricably intertwined with the principal substantive issue that the plaintiff raises on appeal, namely, whether the trial court improperly dismissed the plaintiff's application to vacate on timeliness grounds. See *Argent Mortgage Co., LLC* v. *Huertas*, 288 Conn. 568, 575–76, 953 A.2d 868 (2008). Notwithstanding the plaintiff's failure to file an opposition to the application to confirm in the Superior Court and its failure to address such application in its appellate brief, this court could afford the plaintiff practical relief by reversing the court's dismissal of the plaintiff's application to vacate on timeliness grounds. See General Statutes § 52-417 ("[t]he court or judge shall grant such an order confirming the award *unless the award is vacated*, modified or corrected as prescribed in sections 52-418 and 52-419" [emphasis added]). Therefore, we conclude that the plaintiff's appeal is not moot.[4]

## II

We turn now to the merits of the plaintiff's claims on appeal. The plaintiff first claims that the court erred in dismissing its application to vacate as untimely under our state law on the ground that it was filed beyond the thirty day limitation period set forth in § 52-420 (b).[5] According to the plaintiff, the arbitration provision contained in the parties' financing agreement requires the application of the FAA in all respects, including its three month limitation period to file an application to vacate. See 9 U.S.C. § 12 (2012).[6] The defendants maintain that our state law governs the timeliness question presented, and, therefore, the trial court properly dismissed the plaintiff's application to vacate as untimely under § 52-420 (b). We agree with the defendants.

In the present case, it is uncontested that the plaintiff filed its application to vacate after the expiration of the thirty day limitation period set forth in § 52-420 (b) but within the three month limitation period set forth in 9 U.S.C. § 12. Whether the court properly dismissed the plaintiff's application to vacate as untimely depends on whether state or federal law controls the limitation period in which the plaintiff was required to file such application. Therefore, the question before us is a legal one. "[W]e review a [trial] court's decision to confirm or vacate an arbitration award de novo on questions of law . . . ." (Internal quotation marks omitted.) *Henry* v. *Imbruce*, 178 Conn. App. 820, 828, 177 A.3d 1168 (2017).

## A

We first turn our attention to the fundamental question of whether parties can, *as a matter of law*, agree

to have the FAA's three month limitation period set forth in 9 U.S.C. § 12 apply to a vacatur proceeding filed in Connecticut state court so as to supplant or override the thirty day limitation period in § 52-420 (b). For the reasons that follow, we conclude that they cannot.

We begin with a brief review of the purposes and limitations of the FAA. In 1925, Congress enacted the FAA "[t]o overcome judicial resistance to arbitration"; *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006); and to declare " 'a national policy favoring arbitration' of claims that parties contract to settle in that manner." *Preston* v. *Ferrer*, 552 U.S. 346, 353, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008), quoting *Southland Corp.* v. *Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984). In that connection, § 2 of the FAA provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable." 9 U.S.C. § 2 (2012). The FAA was designed to place agreements to arbitrate "upon the same footing as other contracts . . . ." (Citation omitted; internal quotation marks omitted.) *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 474, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) (*Volt*). The FAA " 'creates a body of federal substantive law,' " and "the substantive law the [FAA] created [is] applicable in state and federal courts." *Southland Corp.* v. *Keating*, supra, 12, quoting *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U.S. 1, 25 n.32, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). The United States Supreme Court has stated that "[t]he FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration. . . . But even when Congress has not completely displaced state regulation in an area, state law may nonetheless be pre-empted to the extent that it actually conflicts with federal law— that is, to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Citation omitted; internal quotation marks omitted.) *Volt*, supra, 477.

The FAA does not create independent federal jurisdiction. The United States Supreme Court has described the nonjurisdictional nature of the FAA as follows: "As for jurisdiction over controversies touching arbitration, the [FAA] does nothing, being 'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." *Hall Street Associates, L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 581–82, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008), citing *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, supra, 460 U.S. 25 n.32. "While the [FAA] creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise."

*Southland Corp.* v. *Keating*, supra, 465 U.S. 15 n.9.

"Given the substantive supremacy of the FAA, but [its] nonjurisdictional cast, state courts have a prominent role to play as enforcers of agreements to arbitrate." *Vaden* v. *Discover Bank*, 556 U.S. 49, 59, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009), superseded by statute in part on other grounds as stated in *Vermont* v. *MPHJ Technology Investments, LLC*, 803 F.3d 635, 643–44 (Fed. Cir. 2015), cert. denied,       U.S.     , 136 S. Ct. 1658, 194 L. Ed. 2d 766 (2016), and cert. denied, *MPHJ Technology Investments, LLC* v. *Vermont*,       U.S.     , 136 S. Ct. 1660, 194 L. Ed. 2d 766 (2016). Accordingly, despite its expansive reach, the FAA does not extend so far as to preempt the procedural rules governing state court proceedings in the absence of an actual conflict with the purposes of Congress. That is because, as the United States Supreme Court has made clear, "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt*, supra, 489 U.S. 476.

We now turn to our state law procedures governing an application to vacate an arbitration award brought in Connecticut state court. "A proceeding to vacate an arbitration award is not a civil action, but is rather a special statutory proceeding. . . . Section 52-420(b) requires that a motion to vacate an arbitration award be filed within thirty days of the notice of the award to the moving party." (Citations omitted.) *Middlesex Ins. Co.* v. *Castellano*, 225 Conn. 339, 344, 623 A.2d 55 (1993).

Our Supreme Court repeatedly has held that the thirty day limitation period set forth in § 52-420 (b) is subject matter jurisdictional. See id. ("[i]f the motion is not filed within the thirty day time limit, the trial court does not have subject matter jurisdiction over the motion"); see also *Wu* v. *Chang*, 264 Conn. 307, 312, 823 A.2d 1197 (2003); *Rosenthal Law Firm, LLC* v. *Cohen*, 165 Conn. App. 467, 471, 139 A.3d 774, cert. denied, 322 Conn. 904, 138 A.3d 933 (2016); *Petrucelli* v. *Travelers Property Casualty Ins. Co.*, 146 Conn. App. 631, 640–41, 79 A.3d 895 (2013), cert. denied, 311 Conn. 909, 83 A.3d 1164 (2014). Indeed, in *Angersola* v. *Radiologic Associates of Middletown, P.C.*, 330 Conn. 251, 267–68, 193 A.3d 520 (2018), our Supreme Court recently reaffirmed the principle of legislative acquiescence, which, as applied to the present case, serves to buttress the court's long-standing interpretation of the limitation period set forth in § 52-420 (b) as subject matter jurisdictional. See id., 268 ("the legislature has never seen fit to overrule our conclusion that compliance with the repose period [in General Statutes § 52-555, this state's wrongful death statute] is a jurisdictional prerequisite to suit").[7] "[A]s an intermediate appellate court, we are

bound by Supreme Court precedent and are unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *State* v. *Montanez*, 185 Conn. App. 589, 605 n.5, 197 A.3d 959 (2018).

It is, of course, a bedrock principle that parties cannot agree to confer subject matter jurisdiction on a court, nor can they waive the lack of subject matter jurisdiction. *Angersola* v. *Radiologic Associates of Middletown, P.C.*, supra, 330 Conn. 265–66 (statutory time limitation that is jurisdictional may not be waived); *Rayhall* v. *Akim Co.*, 263 Conn. 328, 337, 819 A.2d 803 (2003) ("[a]lthough both parties agree that this court has jurisdiction, a subject matter jurisdictional defect may not be waived . . . [or] conferred by the parties, explicitly or implicitly" [internal quotation marks omitted]); *Manning* v. *Feltman*, 149 Conn. App. 224, 236, 91 A.3d 466 (2014) ("subject matter jurisdiction cannot be conferred by waiver or consent").

The foregoing well settled principles require us to conclude that, as a matter of law, parties cannot contract around, by way of a choice of law provision, the subject matter jurisdictional nature of § 52-420 (b), applicable to any application to vacate an arbitration award brought in Connecticut state court. Therefore, the limitation period set forth in § 52-420 (b) applies to the plaintiff's application to vacate. It is not disputed that, if § 52-420 (b) is deemed to be the applicable limitation period, the plaintiff's application was untimely. Accordingly, we affirm the trial court's dismissal of the plaintiff's application to vacate as untimely under § 52-420 (b).[8]

B

In light of the foregoing conclusion, we deem it necessary to discuss a recent decision of this court, *Doctor's Associates, Inc.* v. *Searl*, 179 Conn. App. 577, 180 A.3d 996 (2018).[9] By way of background, in *Doctor's Associates, Inc.*, the trial court had granted the plaintiff's application to confirm an arbitration award entered in its favor and concluded that the defendants' objection to that application, which the parties treated as a motion to vacate the award, was untimely filed under § 52-420 (b). Id., 579–82. On appeal to this court, the defendants claimed that, pursuant to the terms of the parties' arbitration agreement, either federal law or New York law governed the limitation period in which they had to file their motion to vacate the arbitration award. Id., 582–83. Specifically, the parties' agreement provided in relevant part: "Any disputes concerning the enforceability . . . of the arbitration clause shall be resolved pursuant to the [FAA] . . . *and the parties agree that the* [*FAA*] *preempts any state law restrictions . . . on the enforcement of the arbitration clause in this Agree-*

*ment.*" (Emphasis altered.) Id., 585. Thereupon, this court reasoned: "By agreeing that the [FAA] preempts any state law restrictions on the enforcement of the arbitration clause, the parties have made clear that federal law governs the procedures by which the arbitration clause contained in the franchise agreement is to be enforced. It necessarily follows that the procedure for moving to vacate an arbitration award is governed by federal law. Application of Connecticut's statute of limitations for filing a motion to vacate, pursuant to § 52-420 (b), would contradict the parties' contractual intent to use federal law, as expressly agreed to in the franchise agreement." (Footnote omitted.) Id., 585–86. Relatedly, this court also held that "the parties expressly agreed in [their] agreement that federal law preempted the state law procedures used to enforce the arbitration clause. Therefore, federal law should have been used to determine whether the defendants timely filed their motion to vacate." Id., 585–86 n.7. This court went on to note that the agreement contained a general choice of law provision, which provided that Connecticut law governed the agreement: "The Agreement will be governed by and construed in accordance with the substantive laws of the State of Connecticut, without reference to its conflicts of law, *except as may otherwise be provided in this Agreement.*" (Emphasis altered.) Id., 586. However, this court reasoned that "[w]hen the general choice of law clause of the franchise agreement is read in light of the arbitration clause, it becomes clear that although, generally, Connecticut law governs the terms of the agreement, federal law governs the procedures used to enforce the arbitration clause." Id., 587. The court noted: "[W]e do not deviate from the established precedent that holds that the [FAA] does not preempt state law where the parties agreed to abide by state arbitration rules. In this case, the parties expressly intended and contracted that federal law would apply to any disputes regarding the enforcement of the arbitration clause." Id., 586 n.8. Accordingly, this court reversed the judgment of the trial court, concluding that the defendants were entitled to a hearing to determine whether they timely moved to vacate the arbitration award pursuant to the FAA, and that, if so, the trial court was required to reach the merits of their motion. Id., 588.

We have provided the foregoing summary because in *Doctor's Associates, Inc.*, the parties did not raise, and this court did not address, the legal issues we have considered in part II A of this opinion, namely, the subject matter jurisdictional nature of the thirty day limitation period set forth in § 52-420 (b), or the related question of whether a choice of law clause in an arbitration agreement that purports to "preempt" the vacatur procedure under Connecticut law, specifically, § 52-420 (b), violates the principle that parties cannot agree to confer subject matter jurisdiction on the court. That is,

*Doctor's Associates, Inc.*, assumed that parties could, as a matter of law, agree, by way of a choice of law provision, to an application of the FAA's three month limitation period set forth in 9 U.S.C. § 12 to a vacatur proceeding brought in Connecticut state court. The conclusion reached in part II A of this opinion, however, requires us to overrule this court's decision in *Doctor's Associates, Inc.* v. *Searl*, supra, 179 Conn. App. 577, insofar as it stands for the proposition that, as a matter of contract interpretation, parties can agree to have "the procedure for moving to vacate an arbitration award [in Connecticut state court] governed by federal law."[10] Id., 585–86.

### III

The plaintiff next claims that the court erred by reviewing the substance of the plaintiff's application to vacate after ruling that the application should be dismissed. We agree but conclude that any error was harmless.

"[A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . Once it becomes clear that the trial court lacked subject matter jurisdiction to hear the plaintiff['s] complaint, any further discussion of the merits is pure dicta. . . . Lacking jurisdiction, the court should not deliver an advisory opinion on matters entirely beyond [its] power to adjudicate." (Citations omitted; internal quotation marks omitted.) *Shockley* v. *Okeke*, 92 Conn. App. 76, 85, 882 A.2d 1244 (2005), appeal dismissed, 280 Conn. 777, 912 A.2d 991 (2007).

In its memorandum of decision, the court dismissed the plaintiff's application to vacate and subsequently reviewed the substantive grounds of the plaintiff's application in connection with its consideration of the defendants' application to confirm.[11] Thereafter, the court granted the defendants' application to confirm, concluding that "[a]lthough the award was not vacated . . . had the application to vacate survived the motion to dismiss, there was no substantive basis set forth in [the plaintiff's] application to vacate the award . . . ."

Although the court lacked subject matter jurisdiction over the plaintiff's application to vacate, in light of our conclusion that the court properly dismissed the application as untimely and confirmed the arbitration award, any error inherent in the court's consideration of the arguments made in the plaintiff's application to vacate was harmless.

### IV

The plaintiff's final claim on appeal is that the court's award of $2185 in supplemental attorney's fees, pursuant to TILA, on the basis of a $400 hourly rate for Attorney Daniel S. Blinn, counsel for the defendants, is excessive. The defendants contend, to the contrary, that the court's award of supplemental attorney's fees

was within the court's broad discretion. We agree with the defendants.

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Sabrina C.* v. *Fortin*, 176 Conn. App. 730, 752, 170 A.3d 100 (2017).

In its memorandum of decision, the court applied the following presumptively reasonable fee standard, which the plaintiff does not challenge on appeal, stating: " 'To determine reasonable attorneys' fees, the [United States Court of Appeals for the] Second Circuit has historically implemented the lodestar method of examining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. . . . However, in 2008, the Second Circuit determined that [t]he meaning of the term "lodestar" has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness.' *Arbor Hill Concerned Citizens Neighborhood Assn.* v. *County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). In place of the lodestar method, the court used the "presumptively reasonable fee" standard. . . .

" 'The presumptively reasonable fee standard is predicated on the same basic analysis as the lodestar method: the multiplication of the hours reasonably expended by a reasonable hourly rate. . . . Using the presumptively reasonable fee standard, the . . . court must engage in a four-step process: (1) determine the reasonable hourly rate; (2) determine the numbers of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award. . . . As part of the reasonableness analysis, the . . . court should consider the factors enumerated in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)[12] . . . and may adjust the presumptively reasonable fee based on the degree of success of the prevailing party.' . . . *Negron* v. *Mallon Chevrolet, Inc.*, Civil No. 3:08-CV-182 (TPS), 2012 WL 435864 (D. Conn. September 24, 2012)." (Footnote in original.)

Applying the foregoing presumptively reasonable fee standard, the court concluded that the defendants are entitled to a supplemental attorney's fee of $2185. The court reasoned: "Attorney Blinn is a highly experienced

consumer affairs lawyer. He has provided the court with a detailed account of the hours billed in this case, his customary fee in this and similar matters, as well as hourly rates approved by courts in other cases. Although his hourly rate of $400 is relatively high, the court finds his briefs and other filings, totaling 175 pages, to have been produced in a highly professional and efficient manner. The court reaches this conclusion in light of the 6.4 hours of time billed by Attorney Blinn and his paralegal, at [her] lower hourly rate of $150, to produce one brief of sixteen pages in length, as well as a second brief, three pages in length. Attorney Blinn also appeared at two court proceedings in this matter. His efficiency appears to be the result of his experience in this area of the law and, thus, his hourly rate is appropriate in this case. Moreover, he has received a good disposition for his client in this case."

With regard to this claim on appeal, the plaintiff first contends that no reasonable paying client would consider paying an attorney $400 per hour to prosecute the claims brought in this relatively simple matter and that the client would inevitably spend more in attorney's fees than any anticipated gains from litigation would justify. Made without any citation to the record or any legal authority, the plaintiff's argument in this regard is little more than the ipse dixit of counsel and, thus, is unavailing. The plaintiff next contends that the trial court "ignored precedent" by awarding an hourly rate different from that awarded in *Freeman* v. *A Better Way Wholesale Autos, Inc.*, Docket No. CV-13-6045900-S, 2016 WL 1397704, *3 (Conn. Super. March 18, 2016), dismissed in part and aff'd in part, 174 Conn. App. 649, 166 A.3d 857, cert. denied, 327 Conn. 927, 171 A.3d 60 (2017), in which the court, *Huddleston, J.*, described the $400 hourly rate requested therein by Attorney Blinn (as counsel for the defendants in that case) as "somewhat high" and instead found $375 to be a reasonable hourly rate. See *Freeman* v. *A Better Way Wholesale Autos, Inc.*, 174 Conn. App. 649, 651–52 n.1, 166 A.3d 857 (dismissing that portion of appeal contesting award of attorney's fees for failure to amend appeal to include such order), cert. denied, 327 Conn. 927, 171 A.3d 60 (2017). We reject this argument because it is well settled that "[t]rial court cases do not establish binding precedent"; *McDonald* v. *Rowe*, 43 Conn. App. 39, 43, 682 A.2d 542 (1996); and the court in this case simply was not required to adopt the findings of the court in *Freeman* regarding the reasonableness of the hourly rates requested.[13]

In sum, we conclude that the court did not abuse its discretion in awarding the defendants $2185 in supplemental attorney's fees.

The judgment is affirmed.

In this opinion DiPENTIMA, C. J., and LAVINE, KELLER, ELGO and BRIGHT, Js., concurred.

* This appeal originally was argued on May 21, 2018, before a panel of this court consisting of Chief Judge DiPentima, and Judges Moll and Lavery. Subsequently, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Accordingly, Judges Lavine, Sheldon, Keller, Elgo and Bright were added to the panel, and additional oral argument was heard en banc on October 10, 2018. See footnote 3 of this opinion.

The listing of the judges reflects their seniority status on this court as of the date of oral argument on October 10, 2018.

[1] We note that the parties chose not to have the hearing transcribed.

[2] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[3] A three judge panel of this court heard oral argument on May 21, 2018. Following argument, this court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the appeal would be considered en banc and ordered the parties to file supplemental briefs addressing the following questions:

"1. As a matter of law, with respect to an application to vacate an arbitration award filed in the Superior Court, can parties agree to an application of the three month limitation period set forth in the Federal Arbitration Act, 9 U.S.C. § 12?

"2. Does our Supreme Court's holding that the thirty day limitation period set forth in General Statutes § 52-420 (b) is subject matter jurisdictional; e.g., *Wu* v. *Chang*, 264 Conn. 307, 312 [823 A.2d 1197] (2003); *Middlesex Ins. Co.* v. *Castellano*, 225 Conn. 339, 344 [623 A.2d 55] (1993); affect the analysis under question [one]?

"3. What effect, if any, does this court's decision in *Doctor's Associates, Inc.* v. *Searl*, 179 Conn. App. 577 [180 A.3d 996] (2018), have on your answers to questions one and two?"

The court heard oral argument en banc on October 10, 2018.

[4] We note that this court previously has rejected the identical argument in a similar appeal. See *A Better Way Wholesale Autos, Inc.* v. *Gause*, 184 Conn. App. 643, 646–47, 195 A.3d 747, cert. denied, 330 Conn. 940, 195 A.3d 693 (2018).

[5] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

[6] Section 12 of title 9 of the 2012 edition of the United States Code provides in relevant part: "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. . . ."

[7] In *Angersola* v. *Radiologic Associates of Middletown, P.C.*, supra, 330 Conn. 266–69, our Supreme Court discussed its decision in *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 150 A.3d 1109 (2016). In *Blakely*, our Supreme Court asked the parties to submit supplemental briefs on the following question: "Should this court continue to characterize limitation periods contained within statutorily created rights of action as jurisdictional in nature . . . or should this court apply a presumption in favor of subject matter jurisdiction to statutory time limitations for all other actions and determine whether strong evidence of legislative intent exists to overcome that presumption?" (Citation omitted; internal quotation marks omitted.) Id., 749 n.5. In *Angersola*, our Supreme Court stated that its request for supplemental briefing in *Blakely* reflected "the tension we previously have perceived between our characterization of limitation periods contained within statutorily created rights of actions as subject matter jurisdictional and the distinction we have repeatedly drawn between a trial court's jurisdiction and its authority to act under a particular statute." (Internal quotation marks omitted.) *Angersola* v. *Radiologic Associates of Middletown, P.C.*, supra, 267. The court, in both cases, concluded that because § 52-555 created a cause of action that did not exist at common law, and because the legislature had acquiesced to the court's description of the statute of limitations contained therein as a limit on the court's subject matter jurisdiction, it would continue to treat it as such.

The same analysis applies here. "Arbitration proceedings, including court

proceedings to compel arbitration, are creatures of statute in Connecticut and are not common law actions." (Internal quotation marks omitted.) *Bennett* v. *Meader*, 208 Conn. 352, 357, 545 A.2d 553 (1988). Furthermore, "[t]he right to review an arbitration award is wholly encompassed within the parameters of [General Statutes] § 52-418. [Section] 52-418 goes beyond the common law and provides additional grounds upon which to vacate an award." (Footnote omitted; internal quotation marks omitted.) Id., 356–57. In addition, it has been more than twenty-five years since the Supreme Court stated in *Middlesex Ins. Co.* v. *Castellano*, supra, 225 Conn. 344, that the failure to file a motion to vacate in state court within the thirty day time limit of § 52-420 (b) deprived the court of subject matter jurisdiction. Yet, the legislature has not chosen to amend the statute to say that it is not subject matter jurisdictional.

Although the foregoing analysis compels the conclusion that we must continue to view the time limit in § 52-420 (b) as jurisdictional, we can perceive of reasons why the legislature might consider amending the statute to permit parties to agree to waive the time limit. In particular, the right or obligation to arbitrate is a creature of the parties' agreement. If they so agree, they can construct the arbitration process in virtually any manner they wish. They can set the number and qualification of arbitrators. They can decide where and when the arbitration proceedings will take place, whether any rules of evidence will apply, whether there will be a transcript of the proceedings, whether the arbitrator will issue a reasoned or unreasoned award, and who will bear the costs of the arbitration proceedings. Given the freedom the parties have to construct their extrajudicial dispute resolution process as they see fit, it is fair to ask why the parties should not also be able to agree on the time to file a challenge to an award of the arbitrator. In fact, there may be good reasons for them to choose a period of time different from that set forth in § 52-420 (b). For example, the parties, particularly if they are in a long-term relationship, may wish to give themselves time to negotiate a resolution of their dispute after the arbitrator issues his or her award, or they may need time to negotiate how best to implement the award. Requiring them to file a motion to vacate within thirty days may impede their ability to reach an amicable resolution on such issues. An amendment to § 52-420 (b) that allows parties, by explicit written agreement, to extend the date for filing motions to vacate would preserve the presumptive statutory deadline while providing a mechanism for avoiding judicial intervention that would be consistent with the general contractual nature of arbitration.

⁸ We recognize that if the plaintiff had filed its application to vacate in federal court, the thirty day limitation in § 52-420 (b) likely would not have applied, and the application would have been timely filed under the FAA, 9 U.S.C. § 12. Although at first glance, this may seem anomalous, it is simply an example of how the statutory procedures between two independent court systems can differ. Furthermore, this particular difference exists in virtually every case, regardless of the language of the arbitration agreement, where, as here, both the federal and state courts have jurisdiction over a motion to vacate the arbitration award.

⁹ Following the trial court's December, 2016 decision in the present case, this court rendered its decision in *Doctor's Associates, Inc.* v. *Searl*, supra, 179 Conn. App. 577. Prior to the initial oral argument in the present case on May 21, 2018, the parties were "ordered to be prepared to address, at oral argument, the applicability of *Doctor's Associates, Inc.* v. *Searl*, [supra, 179 Conn. App. 577] to this appeal."

¹⁰ "[T]his court's policy dictates that one panel should not, on its own, [overrule] the ruling of a previous panel. The [overruling] may be accomplished only if the appeal is heard en banc." *Consiglio* v. *Transamerica Ins. Group*, 55 Conn. App. 134, 138 n.2, 737 A.2d 969 (1999).

¹¹ The court stated that "[a]lthough [the plaintiff's] application to vacate has been dismissed, the court will briefly review the substance of its claim, as set forth in its brief dated December 7, 2016."

¹² "'The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in

similar cases.' *Negron* v. *Mallon Chevrolet, Inc.*, Civil No. 3:08-CV-182 (TPS), 2012 WL 435864, *1 n.1 (D. Conn. September 24, 2012)."

[13] We further note that the plaintiff argued to the court that, for purposes of awarding any supplemental attorney's fees, Attorney Blinn's hourly rate should be capped at $300 per hour. Thus, the plaintiff's challenge to the award of supplemental attorney's fees, had it been meritorious, would have reduced the award by $490.