******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LUIS SOTO *v.* COMMISSIONER OF CORRECTION
## (AC 43289)

Bright, C. J., and Elgo and Alexander, Js.

*Syllabus*

The petitioner, who had been convicted of the crimes of criminal possession of a pistol and risk of injury to a child, sought a writ of habeas corpus, claiming, inter alia, that his trial counsel, C, had provided ineffective assistance. The police obtained a search warrant for the home of P, the petitioner's cousin, on the basis of a tip from a confidential informant indicating that P was in possession of a semiautomatic handgun. The petitioner was in the home when the police executed the warrant. The police discovered a semiautomatic pistol, which they later determined had been stolen, inside of a backpack that was in the closet of one of the bedrooms. After the petitioner became aware that the police had located the pistol, one of the police officers overheard him ask P in Spanish, "quién va a tomar," meaning, "who's going to take it." Thereafter, both the petitioner and P denied possession and knowledge of the pistol. The petitioner, however, admitted that he was staying in the bedroom in which the pistol was located, that his clothes were hanging in the closet, and that he had been in and out of the closet multiple times. Prior to trial, the petitioner rejected two offers to enter into a plea agreement, the first of which would have required him to serve three years of incarceration and the second of which would have required him to serve two years. Following trial, he was sentenced to a term of twelve years of incarceration. The petitioner filed a writ of habeas corpus alleging, inter alia, that C had rendered ineffective assistance by failing to meaningfully convey the plea offers and by failing to investigate and call the confidential informant as a witness. The habeas court denied the writ of habeas corpus, and, on the granting of certification, the petitioner appealed to this court. *Held*:

1. The habeas court's conclusion that the petitioner failed to prove that he was prejudiced by C's allegedly deficient pretrial advice was not improper: although C rendered professional assistance that may have been deficient in certain respects, the petitioner could not prevail on his claim of ineffective assistance with respect to the pretrial proceedings because he failed to establish, pursuant to *Strickland* v. *Washington* (466 U.S. 668), that he was prejudiced by C's actions, as the habeas court, crediting C's testimony that the petitioner insisted that he was innocent of the crimes charged and thought that the second offer was unfair when compared to the offer received by P and discrediting the petitioner's testimony that, but for C's advice, he would have accepted a plea offer, found that there was no credible evidence that the petitioner was ever willing to accept a pretrial offer, regardless of C's advice; moreover, the petitioner's alternative argument that the habeas court, in analyzing the claim under S*trickland*, applied an improper legal standard failed because, contrary to the petitioner's claim, C's conduct was not presumptively prejudicial under *United States* v. *Cronic* (466 U.S. 648), as the record demonstrated that the petitioner was provided legal counsel throughout his criminal trial, the petitioner did not claim that his criminal trial presented a situation in which no competent attorney could render effective assistance, and C did not entirely fail to subject the prosecution's case to meaningful adversarial testing.

2. The petitioner could not prevail on his ineffective assistance of counsel claim with respect to C's failure to investigate and call the confidential informant as a witness because he failed, under *Strickland*, to establish that he was prejudiced by such failure: the habeas court's conclusion that the informant's testimony would have been cumulative to other evidence elicited at the criminal trial was supported by the evidence, including the warrant to search the apartment, which was obtained on the basis of the informant's tip that P was in possession of a gun; moreover, the state's theory at trial was that the petitioner constructively possessed the gun, and the fact that P had been, at one time, in actual possession of the gun did not by itself negate that theory; furthermore,

the informant did not and could not offer any testimony regarding the petitioner's knowledge, dominion or control of the backpack or the gun that was sufficient to undermine confidence in the verdict, which was supported by the petitioner's admissions and by his incriminating statement in Spanish to P, which supported an inference that he knew of the gun's presence and its incriminating nature; accordingly, this court was not convinced that there was a reasonable probability that, but for C's alleged errors, the result of the proceeding would have been different.

Argued February 8, 2021—officially released September 13, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*James E. Mortimer*, assigned counsel, for the appellant (petitioner).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Cornelius Kelly*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, Luis Soto, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus alleging ineffective assistance of trial counsel. On appeal, the petitioner claims that the court improperly rejected his claim that trial counsel rendered ineffective assistance (1) during pretrial proceedings and (2) by failing to investigate and present the testimony of a confidential informant at trial. We affirm the judgment of the habeas court.

The following facts are relevant to our resolution of the petitioner's claims. "On June 11, 2014, at approximately 5 a.m., police officers with the Statewide Urban Violence Cooperative Crime Control Task Force (task force) executed a search warrant on the second floor apartment at 217 Hough Avenue in Bridgeport. The task force had obtained the warrant on the basis of a confidential informant's tip that Francisco Pineiro, the [petitioner's] cousin, was in possession of a black semiautomatic handgun. When the task force officers applied for the warrant, they believed that, in addition to Pineiro, Christina Jimenez and her two children resided at the apartment.

"Upon entering the apartment, task force officers encountered Pineiro, Jimenez, two children aged ten and five, and the [petitioner]. Some of the task force officers detained the apartment's occupants in the kitchen while other officers searched the apartment. The apartment had three bedrooms, one of which eventually was determined to be the [petitioner's]. In the closet of that bedroom, Detective David Edwards found a leather backpack containing a bag of cocaine, three loose .40 caliber rounds, and a semiautomatic pistol that was fully loaded with twelve rounds. The task force officers eventually determined that the pistol had been stolen several years earlier. Edwards also found the [petitioner's] state identification card on a television stand in that bedroom and some clothes hanging in the bedroom closet.

"While being detained in the kitchen, the [petitioner] became aware that task force officers [had] found a pistol in the bedroom. At that point, Officer Ilidio Pereira, who was detaining the apartment's occupants in the kitchen, overheard the [petitioner] ask Pineiro in Spanish, 'quién va a tomar,' which means 'who's going to take it.'

"After recovering the pistol, Edwards questioned Pineiro, Jimenez, and the [petitioner] about the pistol. Both Pineiro and Jimenez denied possession and knowledge of the pistol. Additionally, Jimenez was 'genuinely concerned and shocked' about the pistol's presence in the apartment and 'placed the blame' on the [petitioner] for the pistol. The [petitioner], who was a convicted felon, stated that the pistol was not his, that he had

never seen it before, and that he did not know to whom it belonged. The [petitioner] did indicate, however, that he was staying in that bedroom, that the clothes hanging in the closet belonged to him, and that he had been 'in and out of the closet multiple times.'

"As a result of the search and questioning of the apartment's occupants, task force officers arrested the [petitioner] on several gun and drug offenses. The state charged the [petitioner] with stealing a firearm in violation of General Statutes § 53a-212 (a), criminal possession of a pistol in violation of [General Statutes] § 53a-217c (a) (1), possession of a controlled substance within 1500 feet of a school in violation of General Statutes § 21a-279 (b), and risk of injury to a child in violation of [General Statutes] § 53-21 (a) (1). The [petitioner] elected a jury trial.

"At trial, the state sought to establish that the [petitioner] constructively possessed the pistol, ammunition, and cocaine seized from Pineiro's apartment. Specifically, it sought to link the [petitioner] to those items with statements he had made to Pineiro and to task force officers at Pineiro's apartment. The [petitioner's] statements were introduced through the testimony of several task force officers who had participated in executing the warrant at Pineiro's apartment. In particular, those officers testified that the [petitioner] asked Pineiro 'who's going to take it' in reference to the pistol, that he indicated that he was staying in the bedroom in which the items were found, that he stated that the clothes hanging in the closet belonged to him, and that he admitted that he had been 'in and out of the closet multiple times.'

"In an effort to refute the officers' testimony with his own version of the events as to what had transpired at Pineiro's apartment, the [petitioner] testified on his own behalf. The [petitioner's] decision to do so rendered this case, in large part, a credibility contest between the [petitioner] and the task force officers. The thrust of the [petitioner's] testimony was a blanket denial of the inculpatory statements the task force officers alleged he had made, including his asking Pineiro 'who's going to take it' with respect to the pistol that the officers had discovered.

"Furthermore, the [petitioner] denied that the officers asked him whether he had been staying in the bedroom in which the pistol was found, whether the backpack in which the pistol was stored belonged to him, whether the cocaine stored in the backpack belonged to him, and whether the clothes in the bedroom belonged to him. According to the [petitioner], the only question the officers asked him was if the gun belonged to him. The [petitioner] testified that, in response to that question, he stated 'that's not my gun, I never saw it.'

"The jury found the [petitioner] guilty of criminal possession of a pistol and risk of injury to a child, but not guilty of stealing a firearm and possession of a controlled substance within 1500 feet of a school." *State* v. *Soto*, 175 Conn. App. 739, 741–43, 168 A.3d 605, cert. denied, 327 Conn. 970, 173 A.3d 953 (2017). The trial court rendered judgment accordingly and sentenced the petitioner to a term of twelve years of incarceration. Id., 744. This court affirmed that judgment of conviction on direct appeal. Id., 757.

On June 9, 2016, the petitioner filed a petition for a writ of habeas corpus, alleging that his trial counsel, Attorney Andre Cayo, rendered ineffective assistance,[1] inter alia, because he failed (1) "to meaningfully convey one or more plea offers to the petitioner" and (2) "to adequately investigate, identify and compel the attendance of the state's confidential informant  . . . ."[2] A habeas trial was held on March 6 and 11, 2019. On June 19, 2019, the court issued a memorandum of decision denying the petitioner's writ of habeas corpus. Thereafter, the habeas court granted the petition for certification to appeal, and this appeal followed.

Before considering the petitioner's specific claims, we first note the well established precepts that govern our review. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . .

"To satisfy the performance prong of the *Strickland* test, the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable pro-

fessional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotation marks omitted.) *Wargo* v. *Commissioner of Correction*, 144 Conn. App. 695, 700–702, 73 A.3d 821 (2013), appeal dismissed, 316 Conn. 180, 112 A.3d 777 (2015).

"It is axiomatic that courts may decide against a petitioner on either prong [of the *Strickland* test], whichever is easier." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 278, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017). "[T]he petitioner's failure to prove either [the performance prong or the prejudice prong] is fatal to a habeas petition." (Internal quotation marks omitted.) *Colon* v. *Commissioner of Correction*, 179 Conn. App. 30, 36, 177 A.3d 1162 (2017), cert. denied, 328 Conn. 907, 178 A.3d 390 (2018). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (Internal quotation marks omitted.) *Kellman* v. *Commissioner of Correction*, 178 Conn. App. 63, 72, 174 A.3d 206 (2017). With those principles in mind, we turn to the petitioner's specific claims of ineffective assistance of counsel.

I

The petitioner first claims that the court improperly concluded that he failed to prove that he was prejudiced by Cayo's allegedly deficient pretrial advice. We do not agree.

The following additional facts and procedural history are relevant to the petitioner's claim. During the habeas trial, Nicholas Bove, the prosecutor from his criminal trial, testified that, although he was not personally involved in any plea negotiations with the petitioner, his review of the file reflected that two offers were made to the petitioner. On October 14, 2014, the state offered the petitioner a sentence of ten years of incar-

ceration, execution suspended after three years, with five years of probation and a $5000 fine (first offer). That offer was withdrawn by the state on November 13, 2014. According to Bove, the trial court proposed a second offer of ten years of incarceration, execution suspended after two years, with five years of probation and a $5000 fine on November 19, 2014 (second offer), which the petitioner rejected.[3] The state was unwilling to offer a term of less than two years of imprisonment. On December 9, 2014, Bove and Cayo appeared before the court, at which time the state represented that there had been no progress on the offer proposed by the court on November 19, 2014. As a result, the court scheduled the matter for a jury trial, which commenced on February 5, 2015.

At the habeas trial, Cayo gave conflicting and confusing testimony regarding whether he had advised the petitioner to consider a plea agreement. Cayo testified that he first appeared on behalf of the petitioner right before trial and had not participated in any pretrial proceedings. As to why he never discussed with the petitioner the mandatory minimum sentences that he faced if convicted, Cayo explained that he was not the petitioner's attorney at the time that the plea offers were made and rejected, which is when such discussions ordinarily would occur with his client. Cayo also stated that, after filing his appearance on behalf of the petitioner, he never approached the state about resolving the case through a plea agreement because he knew the state would not offer less than two years. Cayo also did not recall whether the state made another offer following the petitioner's rejection of the first two offers, stating only, as a matter of practice, rejected offers may or may not be on the table.

When asked if he had "a recollection of there being a firm offer on the table in this case prior to trial when [he] represented the petitioner," Cayo testified that he recalled "talking to one of the state attorneys who made a final offer before trial of two years, no money, or two years and less money." Asked whether he had conveyed only one offer to the petitioner during the course of his representation, Cayo testified: "Yes, just one offer. Actually . . . there might have been a second offer with or without money. So, there was—I think the two years was the same. I think there was an offer with money and another offer without money. So, the [offer] without money may have come second." Cayo testified that he told the petitioner about the second offer, which—contrary to the state's testimony and documentary evidence—he stated was for "two years, no money, or two years and less money." Cayo further testified that the petitioner at that time had claimed that he was innocent and that two years of imprisonment was "too much" because Pineiro had been offered only three months of incarceration.

At the habeas trial, the petitioner testified that, had he not been misadvised by Cayo on a variety of legal and evidentiary issues during his criminal trial, he "would have just took the three years." In particular, the petitioner and Cayo both testified that Cayo never explained the theory of constructive possession to the petitioner. The petitioner also insisted that he had no knowledge of the handgun found by the police.

In its memorandum of decision, the court first concluded that the petitioner's ineffective assistance claim could not succeed because "the evidence fails to establish that [Cayo] was actually the attorney who represented and advised the petitioner at the time he formally rejected the offers." The court also concluded that, even if the evidence sufficiently had established that Cayo represented the petitioner at the time the offer was formally extended, "or that the [second offer] was recommunicated to [Cayo] in a way that obligated him to discuss the matter with [him]," the petitioner had failed to establish prejudice because "Cayo was clear and unequivocal that the petitioner [at that time] . . . insisted [that] he had no knowledge of the drugs or guns with which he was charged, that he firmly protested his innocence, and that he was wholly unwilling to accept a resolution that required him to serve two years in prison. The petitioner also admitted that he always denied knowledge of the gun or the [backpack] when speaking to counsel. . . . [T]he petitioner protested the unfairness of an offer that would require him to serve two years while his codefendant was supposedly only being offered three months." The court thus concluded that, "despite the petitioner's testimony *now*, [there was no] credible evidence that he was ever willing to accept the [second offer], regardless of counsel's advice." (Emphasis in original.)

A

On appeal, we need not address both prongs of the *Strickland* test if either is dispositive of the petitioner's ineffective assistance of counsel claim. See *Quint* v. *Commissioner of Correction*, 211 Conn. App. 27, 32, 271 A.3d 681, cert. denied, 343 Conn. 922, 275 A.3d 211 (2022). Because we conclude that the petitioner has failed to establish that the habeas court erred in its prejudice determination, we limit our analysis to that prong.

We begin our analysis by noting that, to establish prejudice in the context of plea negotiations, a petitioner must show that "(1) it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and (2) the trial judge would have conditionally accepted the plea agreement if it had been presented to the court." *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 357, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*,

569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). Moreover, "[i]t is well established that an appellate court cannot evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Georges* v. *Commissioner of Correction*, 203 Conn. App. 639, 646, 249 A.3d 355, cert. denied, 336 Conn. 943, 250 A.3d 40 (2021).

A review of cases in which habeas courts have made credibility determinations regarding a petitioner's willingness to accept plea offers is instructive. In *Watts* v. *Commissioner of Correction*, 194 Conn. App. 558, 562, 221 A.3d 829 (2019), cert. denied, 334 Conn. 919, 222 A.3d 514 (2020), the petitioner was charged with, inter alia, murder in violation of General Statutes §§ 53a-8 (a) and 53a-54 (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a), and three counts of assault in the first degree in violation of General Statutes §§ 53a-8 (a) and 53a-59 (a) (5) in relation to a shooting in Hartford. The petitioner also was charged with assault in the first degree in violation of § 53a-59 (a) (1) in connection with an altercation in East Hartford. Id. Shortly thereafter, the court offered the petitioner a plea deal of thirty-eight years of incarceration to resolve both cases. Id. The petitioner rejected that offer, and, before jury selection began in the Hartford case, he accepted a separate plea offer of nine years to resolve the East Hartford case. Id. After a jury found the petitioner guilty in the Hartford case of manslaughter in the first degree in violation of General Statutes §§ 53a-8 (a) and 53a-55a (a) and three counts of assault in the first degree, the court sentenced the petitioner to a term of ninety-five years of incarceration. Id., 562–63.

Subsequently, the petitioner brought a habeas action alleging, inter alia, ineffective assistance of counsel. Id., 563. At the habeas trial, the petitioner testified that, if he had received accurate advice from his trial counsel, he would have accepted the plea offer given by the court to resolve both cases. Id., 564. Later in his testimony, however, the petitioner stated that, at the time he was offered a plea deal of thirty-eight years, it was his impression that it was a " 'large sentence.' " Id., 566. The habeas court concluded that "the petitioner did not prove that there was a reasonable probability that he would have accepted the offer of thirty-eight years, even if [his trial counsel] had recommended it, and implicitly discredited the petitioner's testimony." (Internal quotation marks omitted.) Id.

On appeal, this court affirmed the propriety of that determination "[b]ecause the habeas court discredited

the petitioner's testimony, and there was no other evidence from which the court could have found that the petitioner would have accepted the plea deal offered . . . ." Id., 566–67. Accordingly, this court concluded that the petitioner "failed to meet his burden of demonstrating prejudice. Ultimately, the habeas court concluded, after choosing not to credit the petitioner's testimony, that he would not have accepted the plea offer if his lawyer had performed competently and that the petitioner failed to sustain his burden of persuasion of showing that he was prejudiced by his trial counsel's alleged deficient performance. Given our well established deference to the habeas court's credibility determinations, the petitioner cannot prevail on this claim." Id., 567.

In *Fields* v. *Commissioner of Correction*, 179 Conn. App. 567, 180 A.3d 638 (2018), the petitioner challenged his thirty year sentence for felony murder, claiming that his trial counsel rendered ineffective assistance by failing to advise him of a plea offer made by the state before trial. Id., 568–69. Although the habeas court concluded that the petitioner's trial counsel had rendered constitutionally deficient performance by failing to advise the petitioner of the state's twenty-five year plea offer, the court nonetheless determined that the petitioner had not been prejudiced by that deficient performance. Id., 569. Specifically, the court concluded that the petitioner had failed to demonstrate, by a fair preponderance of the evidence, that he would have accepted the offer had his trial counsel conveyed it to him. Id. At the habeas trial, the petitioner testified that he would have accepted responsibility in exchange for the plea offer of twenty-five years. Id., 571–72. In its memorandum of decision, however, the court refused to credit the petitioner's testimony in that regard, noting that "(1) it was self-serving; (2) it was the only evidence in the record that the petitioner would have accepted the offer; and (3) because what the petitioner would do at the time of the hearing, knowing the outcome of his trial, was different from what he would have done at the time of his sentencing." Id., 576.

On appeal, the petitioner in *Fields* claimed that the habeas court erred in concluding he was not prejudiced by his trial counsel's constitutionally deficient performance "because there was no evidence in the record tending to show that he would not have accepted the offer, and, thus, the court's finding to that effect was entirely speculative." Id., 569. This court rejected that claim, stating: "Although we are troubled by the facts of this case concerning [trial counsel's] deficient performance, we must keep in mind that, in assessing the habeas court's finding as to prejudice, [i]t is simply not the role of this court on appeal to second-guess credibility determinations made by the habeas court." (Internal quotation marks omitted.) Id.

Both cases compel a similar conclusion here. In the present case, the habeas court credited Cayo's "clear and unequivocal" testimony that the petitioner insisted that he was innocent of the crimes charged and thought the second offer was unfair when compared to his codefendant's offer.[4] As in *Watts*, the habeas court here discredited the petitioner's habeas trial testimony that, but for Cayo's advice, he would have accepted a plea offer. The court found that there was no "credible evidence that [the petitioner] was ever willing to accept the [second offer], regardless of counsel's advice." As in *Fields*, we are troubled by certain facts concerning Cayo's pretrial conduct. Nonetheless, "[a]ppellate courts do not second-guess the trier of fact with respect to [determinations of] credibility"; (internal quotation marks omitted) *Perez* v. *Commissioner of Correction*, 194 Conn. App. 239, 242, 220 A.3d 901, cert. denied, 334 Conn. 910, 221 A.3d 43 (2019); and "[t]his court does not retry the case or evaluate the credibility of the witnesses." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 141 Conn. App. 626, 632, 62 A.3d 554, cert. denied, 308 Conn. 947, 67 A.3d 290 (2013). In light of the foregoing, we conclude that the petitioner has not established that he was prejudiced by the actions of his trial counsel, and, therefore, he cannot prevail on his first claim of ineffective assistance of counsel.

### B

The petitioner argues in the alternative that, irrespective of the habeas court's credibility determination, Cayo's conduct was presumptively prejudicial under *United States* v. *Cronic*, 466 U.S. 648, 659–60, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), and that the court erred in not analyzing his ineffective assistance claim under that authority. On our plenary review of that question of law; see *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 96–97, 801 A.2d 759 (2002); we disagree.

The United States Supreme Court recognized in *Strickland* that "[i]n certain [s]ixth [a]mendment contexts, prejudice is presumed." *Strickland* v. *Washington*, supra, 466 U.S. 692. In *Cronic*, which was decided on the same day as *Strickland*, the court "elaborated on the following three scenarios in which prejudice may be presumed: (1) when counsel is denied to a defendant at a critical stage of the proceeding; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) when counsel is called upon to render assistance in a situation in which no competent attorney could do so." (Internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 319 Conn. 548, 555, 126 A.3d 538 (2015), cert. denied sub nom. *Semple* v. *Davis*, 578 U.S. 941, 136 S. Ct. 1676, 194 L. Ed. 2d 801 (2016). The court subsequently has emphasized "how seldom circum-

stances arise that justify a court in presuming prejudice . . . ." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 644, 153 A.3d 1264 (2017); see also *Ellis* v. *United States*, 313 F.3d 636, 643 (1st Cir. 2002) ("[t]he only [s]ixth [a]mendment violations that fit within this narrowly circumscribed class are those that are pervasive in nature, permeating the entire proceeding"), cert. denied, 540 U.S. 839, 124 S. Ct. 99, 157 L. Ed. 2d 72 (2003).

None of the three prongs of *Cronic* is implicated in the present case. The record demonstrates that the petitioner was provided legal counsel throughout his criminal trial, and he does not argue otherwise on appeal. The petitioner also does not contend that this case presented a situation in which no competent attorney could render effective assistance. Moreover, when viewed in its entirety, the present case is not one in which counsel entirely failed to subject the prosecution's case to meaningful adversarial testing. Although the petitioner claims that Cayo's representation was deficient in multiple respects, such as misadvising him on the state's plea offers, the likelihood of prevailing at trial, and the probability of a much greater sentence after trial, those claims all concern the adequacy of the representation provided and properly are analyzed under *Strickland*. See, e.g., *Boria* v. *Keane*, 99 F.3d 492, 495–96 (2d Cir. 1996) (in case where trial counsel failed to advise petitioner of slim chance of success at trial, claim of prejudice was reviewed pursuant to *Strickland*), cert. denied, 521 U.S. 1118, 117 S. Ct. 2508, 138 L. Ed. 2d 1012 (1997); *Fields* v. *Commissioner of Correction*, supra, 179 Conn. App. 577 (in case where trial counsel failed to inform petitioner of state's plea offer, claim was reviewed pursuant to *Strickland*); *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 794, 802, 93 A.3d 165 (2014) (in case where trial counsel failed to offer petitioner "her professional advice and assistance concerning, and her evaluation of, the . . . plea offer," claim was reviewed pursuant to *Strickland*).

Contrary to the petitioner's contention, the record before us does not reveal that Cayo " 'wasn't really acting as a lawyer at all.' " In this regard, we are mindful that Cayo helped the petitioner obtain an acquittal on the charges of stealing a firearm and possession of a controlled substance within 1500 feet of a school. See *State* v. *Soto*, supra, 175 Conn. App. 743. Although Cayo rendered professional assistance that may have been deficient in certain respects, we cannot conclude that this case falls into the narrow class for which review under *Strickland* is obviated and prejudice must be presumed. The habeas court, therefore, did not apply an improper legal standard to the petitioner's claim of ineffective assistance.

II

The petitioner next claims that Cayo rendered inef-

fective assistance by failing to investigate and present the testimony of the state's confidential informant (informant). The respondent contends that, because the informant's testimony was cumulative to other evidence presented at the petitioner's criminal trial, Cayo's failure to discover his identity and call him as a defense witness did not constitute constitutionally deficient performance. We conclude that the materiality of the informant's testimony is more appropriately considered under the prejudice prong of *Strickland*. See *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 278 (reviewing court may decide against petitioner on either prong of *Strickland* test).

The following additional facts are relevant to the petitioner's claim. In order to obtain a search warrant for the apartment, the police relied on statements from the informant, an associate of Pineiro who previously had observed a .40 caliber handgun and drugs at Pineiro's apartment. The informant told the police that Pineiro showed him the gun twice in the summer of 2014. During one such occasion, Pineiro showed the informant the gun, cocked it back, and said that "this is for whoever, you know, for whatever I need it for" and that "this is my new toy . . . ." After the informant provided that information to the police, no one contacted him about the case until years later when, approximately two weeks before the petitioner's habeas trial, he was contacted by a private investigator working with the petitioner's habeas counsel. When asked by the private investigator about the petitioner, the informant stated that he "didn't really know who [the petitioner] was," except that Pineiro and the petitioner were cousins. The informant testified that, on those occasions when Pineiro showed him the gun, he had "never seen [the petitioner]" at Pineiro's apartment. He also testified that, if someone had contacted him at the time of the petitioner's criminal trial, he would have provided the same information and would have been willing to testify.

At the habeas trial, Cayo testified that he did not know the informant's identity at the time of the petitioner's trial[5] and did not seek to investigate him because "[h]ow [the police] got the information—at the end of the day, they had information to know there was a gun and who owned the gun and which address the gun was at. And I know my client does not live there. [The petitioner] does not live there. So, I'm thinking, okay, he lives somewhere else. The gun is at his cousin's house. You know, I had evidence of where he lives, and he just happened to be at his cousin's house when the search was executed. So, I thought because of that I didn't need to talk to the confidential informant."

In its memorandum of decision, the habeas court did not make a determination as to whether Cayo's failure to investigate or call the informant constituted deficient

performance. Instead, the court concluded that the informant's testimony was "cumulative to the evidence elicited at trial," reasoning that it was uncontroverted at trial that (1) the search warrant was based on a claim that Pineiro had been seen in possession of a handgun and (2) the petitioner had never been seen in physical possession of the handgun or backpack in question. The court also stated that the informant's testimony did not "exclude the petitioner from knowledge and actual or constructive possession of the weapon inside of the apartment, which was allegedly wrapped in a T-shirt belonging to him,[6] inside the black [backpack], within a closet in the bedroom he slept in at Pineiro's residence." (Footnote added.) Accordingly, the court determined that the petitioner had failed to establish that he was prejudiced by the absence of the informant's testimony.

We reiterate that, "[w]ith respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Madagoski* v. *Commissioner of Correction*, 104 Conn. App. 768, 774, 936 A.2d 247 (2007), cert. denied, 286 Conn. 905, 944 A.2d 979 (2008). This court also has stated that "[t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Donald G.* v. *Commissioner of Correction*, 203 Conn. App. 58, 68, 247 A.3d 182, cert. denied, 337 Conn. 907, 253 A.3d 45 (2021); see also *Nieves* v. *Commissioner of Correction*, 51 Conn. App. 615, 624, 724 A.2d 508 ("[i]n the absence of that showing by the petitioner, we are unable to conclude that he was prejudiced by counsel's failure to interview the witnesses"), cert. denied, 248 Conn. 905, 731 A.2d 309 (1999).

A review of other cases dealing with the failure of trial counsel to call potential witnesses to testify is instructive. In *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 504–505, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009), a jury convicted the petitioner of manslaughter in the first degree after crediting the

state's evidence that he had dragged two men from their car and beat them, one of them fatally, because the men had failed to pay him in connection with a drug deal. In his subsequent habeas petition, the petitioner alleged that his trial counsel was ineffective for failing to present a third-party culpability defense predicated on the testimony of several witnesses, namely (1) the driver of the car that struck the victim's car, (2) two emergency medical technicians who arrived shortly thereafter, and (3) the girlfriend of the surviving victim, with whom she had spoken shortly after the incident. Id., 505–506. After hearing testimony from those witnesses, the habeas court found their credibility to be " 'considerable and compelling' " because all four were neutral witnesses who were not meaningfully impeached at the habeas trial. Id., 510–11. The court thus granted the petition for a writ of habeas corpus, concluding that " 'it was harmful to the petitioner and constituted inadequate representation to avoid introducing available and credible evidence of a clearly exculpatory nature . . . .' " Id., 511. In affirming that judgment, our Supreme Court observed that, if the four witnesses had been called to testify, their testimony "likely would have permeated to some degree every aspect of the trial and raised a reasonable doubt in the minds of the jury as to the petitioner's guilt." Id., 523. Moreover, our Supreme Court concluded that the testimony "would have called into question the most basic elements of the state's case: (1) that the petitioner was the individual who killed [the victim]; and (2) that [the victim] died as a result of a beating." Id., 520.

By contrast, in *Meletrich* v. *Commissioner of Correction*, 178 Conn. App. 266, 272–73, 174 A.3d 824 (2017), aff'd, 332 Conn. 615, 212 A.3d 678 (2019), the petitioner alleged that his trial counsel, Claud Chong, was ineffective because he failed to call Guillermina Meletrich, the petitioner's aunt, as an alibi witness. Although Chong did not call Meletrich, he did call the petitioner's girlfriend, Christina Diaz, who testified as an alibi witness at trial. Id., 276 n.3. This court determined that Meletrich's testimony "would have been cumulative of that of Diaz. Diaz testified at the criminal trial that she had been with the petitioner every moment from the time she arrived until after the robbery. . . . Meletrich stated that Diaz was with the petitioner when she came to see him. Finally, Chong, who did not remember every detail, testified nonetheless that he or his investigator interviewed several friends and family members and thought Diaz could provide the best alibi because she could cover the petitioner's whereabouts at the time of the robbery." Id., 283–84. Because of the cumulative nature of Meletrich's testimony, this court concluded that the addition of Meletrich's testimony "would [not] have reasonably affected the jury's verdict." Id., 286.

In the present case, the petitioner argues that he was prejudiced by Cayo's failure to call the informant as a

witness at his criminal trial because the informant's testimony "clearly indicates" Pineiro's ownership of the handgun. As this court noted in the petitioner's direct appeal, the evidence adduced at his criminal trial demonstrated that the warrant to search the apartment was obtained on the basis of a tip "that [Pineiro] . . . was in possession of a black semiautomatic handgun." *State* v. *Soto*, supra, 175 Conn. App. 741. Moreover, there was no evidence before the jury that the petitioner owned or ever was seen in possession of the handgun. For that reason, Cayo argued to the jury during closing argument that the handgun belonged to Pineiro. That evidence supports the habeas court's conclusion that the confidential informant's testimony would have been cumulative to other evidence elicited at trial.

Furthermore, the state's theory at trial was that the petitioner *constructively* possessed the handgun seized from Pineiro's apartment; see id., 742; and not that he had *actual* possession of it. "There are two types of possession, actual possession and constructive possession. . . . Actual possession requires the defendant to have had direct physical contact with the [gun]. . . . Where . . . the [gun is] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the premises where the [gun is] found, it may not be inferred that [the defendant] knew of the presence of the [gun] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference." (Citation omitted; internal quotation marks omitted.) *State* v. *Dawson*, 188 Conn. App. 532, 541–42, 205 A.3d 662 (2019), rev'd in part on other grounds, 340 Conn. 136, 263 A.3d 779 (2021). "Under the doctrine of nonexclusive possession, more than one person can possess contraband." *State* v. *Rhodes*, 335 Conn. 226, 234, 249 A.3d 683 (2020). "Although ownership may be evidence of constructive possession . . . ownership is not necessary for constructive possession to be established." (Citation omitted.) *State* v. *Bowens*, 118 Conn. App. 112, 124 n.4, 982 A.2d 1089 (2009), cert. denied, 295 Conn. 902, 988 A.2d 878 (2010).

Here, the fact that Pineiro was, at one point in time, in actual possession of the firearm does not by itself negate the state's theory that the petitioner constructively possessed the handgun. As we have noted, when the police searched Pineiro's apartment, they located the handgun in a backpack in a bedroom closet. *State* v. *Soto*, supra, 175 Conn. App. 741. The petitioner's state identification card was on a television stand in the bedroom and some clothes were hanging in the bedroom closet. Id. When questioned by the police, the petitioner admitted that he was staying in the bedroom where the handgun was located, that the clothes hanging in the bedroom belonged to him, and that he had

been " 'in and out of the closet multiple times.' " Id., 742. Most important to the state's case was the statement overheard by the police in which the petitioner asked Pineiro in Spanish, "quién va a tomar," meaning "who's going to take it." (Internal quotation marks omitted.) Id., 741–42. At trial, the state argued that this remark was an incriminating statement tending to buttress an inference that the petitioner knew about the handgun's presence and incriminating nature. Id., 744. As the habeas court correctly noted in its memorandum of decision, other than testimony of Pineiro's potential ownership of the firearm, the informant "did not, and could not . . . offer any testimony regarding the *petitioner's* knowledge, dominion or control of the [backpack] and gun, or lack thereof, sufficient to undermine confidence in the verdict." (Emphasis added.)

Because we are not persuaded that the informant's testimony would have "called into question the most basic elements of the state's case"; *Bryant* v. *Commissioner of Correction*, supra, 290 Conn. 520; or that it would have "been helpful in establishing the asserted defense"; (internal quotation marks omitted) *Donald G.* v. *Commissioner of Correction*, supra, 203 Conn. App. 68; we are not convinced that "there is a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Madagoski* v. *Commissioner of Correction*, supra, 104 Conn. App. 774. We therefore conclude that the petitioner has not established that he was prejudiced by Cayo's failure to investigate and call the informant as a witness and, accordingly, cannot prevail on his claim of ineffective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In his petition, the petitioner also raised a claim of actual innocence, which the court rejected. On appeal, the petitioner does not challenge the propriety of that determination.

[2] The petitioner also alleged that Cayo was ineffective because he failed (1) "to provide the petitioner with affirmative advice as to what plea [he] should enter," (2) "to properly and adequately investigate witnesses," (3) "to properly and adequately present the testimony of witnesses," (4) "to investigate and present witnesses to identify the firearm as belonging to [Pineiro]," (5) "to seek correction of the [trial] court's statement that the petitioner had a room in the home of [Pineiro and Jimenez]," (6) "to adequately seek to compel the testimony of [Jimenez]," (7) "to adequately exclude evidence of the petitioner's prior conviction for possession of a weapon," (8) "to adequately advise the petitioner of the undesirability of exercising his right to testify," and (9) to act reasonably when he "argued to the jury about his own criminal matter(s) . . . ." The habeas court concluded that those claims lacked merit, and the petitioner does not contest those rulings on appeal.

[3] The record indicates that Attorney Thomas Paoletta filed an appearance for the petitioner on June 12, 2014. Although Cayo filed his appearance in lieu of the public defender's office on November 13, 2014, Attorney Joanna Carloni from the Office of the Public Defender appeared with the petitioner in court on November 19, 2014, and reported that he was eligible for its services. The transcript of the hearing on November 19, 2014, does not reflect the substance of any off the record discussions regarding an offer by the court.

⁴ We note that the petitioner has asserted that this determination by the habeas court was "predicated on clearly erroneous factual findings . . . ." We do not agree. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. . . . It is not enough to merely point to evidence in the record that contradicts the court's findings." (Citation omitted; internal quotation marks omitted.) *Rosa* v. *Commissioner of Correction*, 171 Conn. App. 428, 434, 157 A.3d 654, cert. denied, 326 Conn. 905, 164 A.3d 680 (2017).

The petitioner first contends that, although the habeas court concluded that the petitioner "protested the unfairness of an offer that would require him to serve two years while his codefendant was supposedly only being offered three months," Cayo had testified that *he advised* the petitioner that "[t]wo years was too much time especially when [Pineiro] was getting three months." Earlier in Cayo's testimony, however, he stated that "my client did not want to do two years because . . . based on my advice *and based on what he felt*, he should not have to do two years if it's [Pineiro] who . . . was getting three months." (Emphasis added.) More importantly, the habeas court had before it the following colloquy between counsel for the respondent and Cayo:

"Q. [D]id [the petitioner] at any point in time during those situations that you met with him on the court dates indicate that 'I want to plead guilty to these charges?'

"A. No.

"Q. He never indicated that?

"A. No.

"Q. And he wanted this trial?

"A. Well, not necessarily. He was willing to do less than two years.

"Q. Okay.

"A. But he didn't want to do two years.

"Q. Right.

"A. He thought two years was too much.

"Q. All right.

"A. And—

"Q. And I believe the state wasn't willing to come off that two year offer?

"A. Correct.

"Q. Thus, creating a situation where the case was destined for a trial which you did have?

"A. Yes."

As a result, the court had before it testimony that the petitioner independently believed two years was "too much" time under the circumstances. In addition, there was a plethora of evidence on which the court could have relied in concluding that the petitioner was not credible, including his testimony that Cayo conveyed both pretrial offers to him. Therefore, the court's finding that there was no credible evidence that the petitioner was ever willing to accept a pretrial offer, regardless of counsel's advice, is not clearly erroneous.

The petitioner also argues that, when the habeas court concluded that he was "wholly unwilling to accept a resolution that required him to serve two years in prison," it failed to consider Cayo's testimony that the petitioner "probably was willing to take the two years without the fine." A review of the record nonetheless indicates that there was conflicting evidence as to whether there was an offer for two years of imprisonment without a fine. According to Bove, the first offer and the second offer both included a $5000 fine. Cayo, however, testified: "I think there was an offer with money and another offer without money. So the [offer] without money may have come second." Additionally, Cayo testified the petitioner was unwilling to accept an offer for two years of imprisonment because Pineiro was offered significantly less time in prison. In the face of such conflicting evidence, we are mindful of our long-standing precedent that, "[w]hen there is conflicting evidence . . . it is the exclusive province of the . . . trier of fact, to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Questions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass on the credibility of witnesses. . . . We must defer to the trier of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude . . . ." (Internal quotation marks omitted.) *State* v. *Williams*, 200 Conn. App. 427,

448, 238 A.3d 797, 811–12, cert. denied, 335 Conn. 974, 240 A.3d 676 (2020). The petitioner's arguments merely point to evidence in the record that contradicts the court's factual findings, which is insufficient to support a determination that those findings are clearly erroneous. See *Rosa* v. *Commissioner of Correction*, supra, 171 Conn. App. 434.

[5] We note that Cayo's testimony at the habeas trial was inconsistent as to whether he knew the identity of the confidential informant. At one point, Cayo testified that "someone told [him]" the identity of the informant, yet, earlier in his testimony, Cayo stated: "I don't even know who [the confidential informant was]" and that "I don't even think I asked for the information about the confidential informant . . . ."

[6] We note that the petitioner claims that the court's factual finding that the shirt belonged to him was clearly erroneous. Even if we were to accept that claim, we nonetheless would not conclude that Cayo's allegedly deficient performance was prejudicial to the petitioner in light of the other evidence of his constructive possession of the handgun found inside the apartment.